# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—DECEMBER TERM, 1884.

CHICAGO, ROCK ISLAND & PACIFIC RY. CO.,

v.

JOHN BARRETT.

1. COMMON CARRIER—TREATMENT OF PASSENGERS.—In every contract of carriage there is a stipulation implied by the law that the passenger shall be humanely treated, and a guarantee that the servants of the carrier, engaged in the performance of their master's contract, shall not unjustifiably assault or beat or otherwise maltreat the passenger while the master sustains such contract relations to him, and the master must respond for any breach of such contract committed by his servants, and this regardless of the servant's motive in committing the act violating the contract.

2. MISCONDUCT OF PASSENGER—INJURY BY CONDUCTOR—PLEADING.— While the carrier may rescind the contract of carriage for certain misconduct of passengers, the penalty for such misconduct must not be enforced unreasonably or oppressively. Where, by its plea, defendant relied upon the alleged fact that the conductor was endeavoring to enforce the authority in him vested by the statute, to remove the appellee from the train for his misconduct during the trip and for attacking him at the place of destination, and made the allegation that no unnecessary damage or injury was done to appellee, a material averment under the statute, if this averment fails to be established by the proof under the replication de injuria, the whole defense made by the plea must fail.

3. SEVERANCE OF RELATION OF PASSENGER AND CARRIER.—The severing of the relation of carrier and passenger is not necessarily dependent upon the fact that the passenger upon reaching his destination actually left the car, nor on the other hand does the mere fact that the passenger had sufficient time and opportunity to leave the conveyance and failed to do so operate in every instance as a severance of the relation. If a passenger hav-

(17)

ing time and opportunity to safely leave the train, remains in the car for the unlawful purpose of assaulting the servants of the carrier, he must be considered as having abandoned the protection afforded him by his contract. As in this case, the disputed fact whether the appellee, when assaulted by the conductor, still occupied the relation of a passenger, was made by the court's instruction to depend upon the question whether he had actually left the car or not, and appellant's tenth instruction upon the point refused, it was error.

4.  DAMAGES.—This court is of opinion that the verdict for $800 damages is not excessive, if the jury found the conductor made the attack upon the passenger without provocation; but if, as claimed by the carrier, the passenger unlawfully attacked the conductor to carry out a threat to injure him, and the verdict returned was based upon the fact that the conductor used excessive force in repelling the attack, this court is of opinion that a much smaller amount would satisfy the law.

APPEAL from the Circuit Court of Grundy county; the Hon. F. GOODSPEED, Judge, presiding.  Opinion filed January 16, 1885.

This action was instituted by the appellee to recover damages for injuries received by him from an alleged assault and battery committed by the conductor of the appellant upon him.

The declaration contains two counts, and as shown by appellant's abstract, is substantially as follows:

First count alleges ownership of railroad for the purpose of carriage of goods and passengers from Seneca to Morris, with certain trains running thereon under the care of divers servants of the defendant, who were engaged in running the same by the railroad aforesaid.  That the plaintiff on the day aforesaid, March, 1882, at Seneca, became a passenger from thence to Morris for a certain reward to the defendant paid by the plaintiff; avers that it was the defendant's duty while running its trains as aforesaid, to have and keep servants who would care for its said passengers and treat them respectfully, and in no wise assault or ill-treat them.  Yet defendant did not regard its duty in that behalf, but, on the contrary, plaintiff avers that while the plaintiff was in and upon said train as a passenger as aforesaid, and while plaintiff was with all due care, dilgence and peacefulness, being so conveyed in defendant's

train, defendant, by its servant, to wit, the conductor, engaged and employed in and about said trains, at the county of Grundy, with a certain wooden stick which he had in his hand, knocked him down upon the floor of said car, inflicting a dangerous wound upon his head, and while so down upon the floor, again struck plaintiff divers violent blows about the body, whereby plaintiff became greatly hurt and wounded, and became sick, sore, lame and disordered, and so remained, and was prevented from performing and transacting his business, and was obliged to lay out divers sums of money, amounting to the sum of $500, in getting cured, to the great damage of the plaintiff, and against the peace of the people of the State of Illinois. Therefore plaintiff says he has sustained damage to the sum of five thousand dollars.

Second count alleges ownership of railroad and entrance of plaintiff upon train to be carried as a passenger from Seneca to Morris, substantially as in first count; avers that it was the defendant's duty to carry its passengers upon said train for hire, in safety, and to protect them from the misconduct of the servants of the defendant, and also to employ in and about the operation of said train, servants who would treat its passengers respectfully, and care for them while upon said train, and in no wise assault, abuse or ill-treat them. Yet defendant did not regard its duty in that behalf, but the plaintiff avers that while the plaintiff was in and upon the train as a passenger, being carried for hire and reward, and was, with due care and diligence on his part, being so conveyed, the defendant at the county of Grundy, by its servant, to wit, the conductor, with great force and violence, assaulted plaintiff, and with a certain stick of wood which he had in his hand then gave to the plaintiff divers blows upon the head and body, inflicting upon him divers deep and dangerous wounds, to his damage, as in the first count alleged, in the sum of five thousand dollars.

The defendant pleaded the general issue and a special plea as follows:

Defendant says: *Actio non*, because it avers that at the time when, etc., the plaintiff came upon defendant's train

to be carried as a passenger from Seneca to Morris, and while upon said train and being so carried, and during his passage from Seneca to Morris, and after the arrival of the train at Morris, said plaintiff, instead of conducting himself peacefully and properly, as was his duty to do, used abusive, threatening, vulgar and obscene language, and in the presence and hearing of the passengers upon said train, some of whom, to wit, three, were ladies, and occupied the same car in which plaintiff was being carried; and the said plaintiff so violently and indecently conducted and behaved himself as to make his presence offensive to the passengers then and there in said car; and after the arrival of said train at Morris, said plaintiff, in a loud and violent and menacing manner, threatened to commit bodily injury upon the conductor, and refused to leave said train upon its arrival at Morris, but continued thereon and in said car for the purpose and with the intent of, then and there, in the presence of the passengers, to commit an assault upon the conductor, and did then and there, with great violence, assault the conductor, contrary to the statute in such case made and provided; wherefore the conductor did then and there defend himself against the plaintiff as he lawfully might, and did then and there, as it became his duty to do in pursuance of the statute in such case made and provided, eject and expel plaintiff from said car and train, and in so doing did necessarily and unavoidably a little beat, bruise and wound the said plaintiff, doing no unnecessary injury or damage to the plaintiff; and avers that if any injury happened to plaintiff, the same was occasioned by the said assault so made by the plaintiff on the conductor, which are the same supposed grievances and trespasses in said declaration mentioned; and this the defendant is ready to verify.

To this plea the plaintiff filed the replication *de injuria* upon which issue was joined.

Upon the trial below the plaintiff's testimony tended to show that he took passage upon a freight accommodation train at Seneca to be carried to Morris; that he had no ticket and gave the conductor a dollar, and received in change sixty

C., R. I. & P. Ry. Co. v. Barrett.

cents. Upon arriving in Morris and as he was going out of the car he told the conductor that he had charged too much fare; the conductor denied this and then turned around and struck the plaintiff on the head with a club, knocking him down. That the blow made him unconscious for some time and has seriously impaired his health and still causes him great pain, and he is unable to do the amount of work he formerly could.

The evidence of the defendant tended to show that the plaintiff had an opportunity to obtain a ticket at Seneca, that his companion, one Cash, did buy his ticket and advised the plaintiff also to do so, as did the ticket agent, but he refused or neglected to get one. That Cash and the plaintiff were both drunk when they were about to board the train; the conductor asked them if they had tickets, and Barrett replied he had not and did not propose to get one, and was then told he would have to pay ten cents more; that it was a rule of the company for the conductors to collect ten cents above the price of the ticket where the fare was paid on the train; that the price of a ticket from Seneca to Morris was thirty cents and the fare was forty cents where no ticket was purchased. The plaintiff when the conductor was collecting fares held a silver dollar in his hand, and before he would give it to the conductor, demanded the extra ticket change which the conductor refused to give, but ordered the brakes set to stop the train for the purpose of putting the plaintiff off; and thereupon the plaintiff gave him the dollar and received the sixty cents in change. That during the run to Morris, Cash and the plaintiff were very disorderly in their conduct, and the plaintiff used profane and obscene language in the presence of the passengers, several of whom were ladies, and threatened to " slug " the conductor when he arrived at Morris, if he did not return him the ten cents, and that this threat was communicated to the conductor and he was warned to look out. Upon the arrival at Morris and after the train had stopped, the plaintiff and Cash went to the rear door of the caboose, and one of them, believed to be Cash, went out upon the platform and the plaintiff close behind him as far as the car door

at least. That then instead of leaving the train as they had opportunity to do, they turned about, and the plaintiff went toward the conductor, who was then approaching from the front end of the car, and with an oath demanded the ten cents; and upon the conductor refusing to return it he says, " I will have it or have blood," and making a stroke with his fist at the conductor, who then jumped back, picked up a stick used about the brakes, and gave the blow of which complaint is made. The plaintiff below recovered and the defendant appealed.

Mr. THOMAS F. WITHROW and Mr. J. C. HUTCHINS, for appellant; that plaintiff was not a passenger at the time of the assault, and therefore not entitled to recover, cited C. & E. I. R. R. Co. v. Flexman, 103 Ill. 546; Imhoff v. C. M. & St. P. R. R. Co., 20 Wis. 346; C. B. & Q. R. R. Co. v. Boger, 1 Bradwell, 472.

It is as much the duty of the passenger to conform to reasonable rules of all kinds as it is the duty of the carrier: W. St. L. & P. Ry. Co. v. Rector, 104 Ill. 302; C. B. & Q. R. R. Co. v. Bryan, 90 Ill. 126; L. M. R. R. Co. v. Wetmore, 19 Ohio, 110; Brown v. M. & C. R. R. Co., 7 Fed. Rep. 51; C. B. & Q. R. R. Co. v. Griffin, 68 Ill. 499; P. Ft. W. & C. Ry. Co. v. Hinds, 53 Pa. St. 512; Churchill v. C. & A. R. R. Co., 67 Ill. 393.

As to the duty of passengers to get off at their destination within a reasonable time: Straus v. Kansas City R. R. Co., 6 Am. & Eng. R. Cas. 384; W. St. L. & P. Ry. Co. v. Rector, 104 Ill. 296; T. W. & W. R. R. Co. v. Baddeley, 54 Ill. 19; Commonwealth v. R. R. Co., 1 Am. & Eng. Cas. 459; Dawson v. Louisville R. R. Co., 11 Am. & Eng. Cas. 134; Thompson on Carriers, 227.

Messrs. HALEY & O'DONNELL, for appellee; that a corporation is liable for the willful tortious acts of its servants while in discharge of their duties, cited Chicago City Ry. Co. v. McMahon, 103 Ill. 485; N. W. Ry. Co. v. Hack, 66 Ill. 238; C. & E. I. R. R. Co. v. Flexman, 103 Ill. 546; Pendleton v.

Kinsley, 3 Cliff. 416; Thompson on Carriers, 352; Craker v. C., etc., R. R. Co., 36 Wis. 657; Rounds v. D., etc., R. R. Co., 64 N. Y. 129; Hanson v. European R. R. Co., 62 Me. 84.

PILLSBURY, J.   The law, under the contract entered into by a common carrier of persons, when it receives the price demanded for the service required, imposes upon the carrier the duty of exercising the highest degree of care, skill and vigilance to carry the passenger to his destination in safety, and for the slightest neglect in this regard the carrier is liable to the passenger, if in consequence thereof, he be injured.   G. & C. U. R. R. v. Yarwood, 15 Ill. 468; G. & C. U. R. R. Co. v. Fay, 16 Ill. 558; Penn. R. R. Co. v. Roy, 102 U. S. 451.

This duty is not necessarily fulfilled by guarding the passenger against the perils incident to the mode of transporation, but extends to a protection of the passenger from all dangers from any source, including assaults from the other passengers or strangers, so far as such danger could be reasonably foreseen or expected to occur by the exercise of such care, skill and vigilance on the part of the carrier, in view of all the circumstances surrounding the case.   Flint v. Transportation Co., 34 Conn. 554, 6 Blatchf. 158; Pittsburg, etc., R. R. v. Pillow, 76 Penn. St. 510; New Orleans, etc., R. Co. v. Burke, 53 Miss. 200.; Britton v. Atlanta, etc., R. Co., 88 N. C. 536 (43 Am. R. 749); Holly v. Atlanta Street R. R. Co., 61 Georgia, 215.

And, not only this, but in every such contract of carriage there is a stipulation implied by the law that the passenger shall be humanely treated, and a guarantee that the servants of the carrier, engaged in the performance of their master's contract, shall not, unjustifiably, assault or beat him, or otherwise maltreat him while the master sustains such contract relations to him.   Goddard v. R. R., 57 Me. 202; Neito v. Clark. 1 Cliff. 145; Croaker v. C. & N. W. Co., 36 Wis. 657; Stewart v. R. R. Co., 90 N. Y. 588; Bryant v. Rich, 106 Mass. 180; C. & E. I. R. R. v. Flexman, 9 Bradwell, 250; 103 Ill. 546.

This obligation arising from the contract of carriage implied

by law, is the same as the duty imposed upon the carrier by the common law and co-extensive with it; hence for a breach of duty the passenger may sue upon the contract, or in tort as for a breach of duty. McElroy and Wife v. R. R. Co., 4 Cush. 400; Bryant v. Rich, 106 Mass. 180; C. & E. I. R. R. v. Flexman, *supra*.

He is not advised what servants the carrier will select to perform its contract, but has a right to presume that his contract will be carried out in good faith, and that he will be placed in charge of none but humane and courteous gentlemen.

As to him, the servants in charge of the train must be considered as the company itself, and every act of theirs which affects the contract of the carriage, either favorably or unfavorably to the company, must be held to be its act, and while claiming and receiving the benefits arising from the performance of the contract by its servants, the carrier must respond for any breach of it committed by them. And this seems to be the rule regardless of the motive of the servant in committing the act that violates the contract.

Thus, in Flexman's case, *supra*, where the servant struck the passenger with a lantern to resent a personal insult, and in Croaker v. C. & N. W. Ry. Co., 36 Wis. 657, the conductor, without any ill feeling toward his female passenger, kissed her against her will, and in Dalby's case, 19 Ill. 353, where the servant was endeavoring to enforce a rule of the company reasonable in itself but not applying to the case in hand, the railroad company was in each instance held liable for the assault of the servant upon the passenger.

There are cases, it is true, where the right of the passenger to recover from the carrier for the assault of the servant is placed upon the same ground as though he was a stranger to the master; but it is believed that in such cases the courts overlooked the true relations existing between the parties arising out of the contract of carriage. Such was the case of Isaac v. Third A. R. R. Co., 47 N. Y. 122, where the assault upon the passenger by the servant was held not to have been committed by him in the line of his employment, and the

carrier was held upon that ground not to be liable. But in the subsequent case of Stewart v. Brooklyn, etc., R. R., 90 N. Y. 588, where the same question was made, the court admitted that in Isaac's case the mind of the court was not directed to the point that the passenger occupied a very different relation to the master than a party to whom he was under no contracted obligations, and Flexman's case, *supra*, was referred to as announcing the true rule, and the plaintiff was allowed to recover. The effect of this latter decision was to overrule the Isaac case, and to place the doctrine of that court in harmony with the great weight of authority where the question has been determined.

Of course there are corresponding obligations resting upon the passenger. He should exercise reasonable care for his own safety; obey promptly every reasonable rule and regulation, of which he has notice, prescribed by the carrier for the security of the passenger and the safety and proper management of the train; refrain from any interference with the servants of the carrier in the performance of their duties, and afford them any assistance he may be able to render upon all proper occasions when requested so to do by them. He must not be guilty of any disorderly conduct, nor use any obscene language to the annoyance of his fellow passengers; in a word, he should conduct himself as a gentleman. To maintain proper discipline upon his train the conductor is by statute invested with police powers, and to protect his passengers from annoyance or vexation by the disorderly conduct of, or the use of obscene language by any passenger on his train, he is authorized to stop his train at any place where such offense has been committed and remove such offender from the train, using no unnecessary force in so doing. And it is believed that if any passenger should improperly interfere with the servants of the carrier in charge of the train in the proper management and control of it, and would not desist upon request, the law would not only justify but require for the safety of the train and the other passengers, the conductor to likewise remove him from the train. It therefore became a material question upon a trial of this cause whether the

appellee, at the time he was struck by the conductor, was still a passenger upon the train and entitled to rely upon the contract of carriage for protection against the act of the servant. If he had ceased to be a passenger, or by his own voluntary act had placed himself in a position where the law would not recognize him as occupying that relation to the appellant, he can not recover in this case, as the declaration places his right of recovery upon the ground that he was a passenger, and as such entitled to the protection of the appellant.

It is urged that the appellee so conducted himself during the trip as to forfeit his right to carriage, and the conductor could have removed him, and the evidence tends very strongly to support this claim; but it is to be noticed that the conductor did not exercise the authority possessed by him, and which perhaps he should have done, to stop his train, refund a just proportion of the fare received and then remove the appellee from the train. Instead of doing this he retained the passage money, and permitted him to ride to his destination, and under such circumstances the appellant surely can not justify an assault upon him because of his prior misconduct.

Having been permitted to complete his journey, he should be allowed to leave the car peaceably if he desired so to do.

It is next urged that after the train arrived at Morris the appellee had sufficient time and opportunity to alight, but instead of doing so, he remained in the car for the purpose of carrying out his threat to " slug the conductor in the head," and sought the conductor, with that object in view. Upon this branch of the case the appellant asked the court to give to the jury its tenth instruction, as follows:

10.   If the jury find from the evidence that after the arrival of the train at Morris, upon which the plaintiff took passage at Seneca, a reasonable opportunity was given to the plaintiff to leave the train without hindrance or molestation, but instead of so doing he remained on the car and sought a personal controversy with the conductor, while the conductor was not in the performance of any duty as an employe of the defendant, as a carrier of passengers, and by threats of personal violence toward the conductor, provoked an assault upon him-

self by the conductor in charge of the train, but that such assault had no connection with the discharge of any duty by the conductor as an employe of the defendant, with relation to the plaintiff as a passenger, then the jury are instructed that the defendant is not liable for any damage resulting to the plaintiff from such assault.

We do not find that any instructions given to the jury contains the principle announced in this, and as there is evidence in the record tending strongly to support the theory announced by it, the court should have given it or some one conveying substantially the same idea. The court *did* instruct the jury that if the appellee had *left the car* and then returned into it for the purpose of seeking a personal controversy with the conductor, etc., he could not recover. The court, by giving this instruction and refusing the tenth, made the disputed fact whether the appellee still occupied the relation of a passenger to depend upon the question whether he had actually left the car or not.

We do not think that the severing of the relation of carrier and passenger is necessarily dependent upon this fact. If the appellee, having time and opportunity to safely leave the train, remained in the car for the unlawful purpose of assaulting the servants of the appellant, he must be considered as having abandoned the protection afforded him by his contract, and the appellant would no longer be bound by its provisions.

It was his duty to alight within a reasonable time after the train stopped at the station, and the law will not continue his contract in force thereafter, while he remains in the conveyance for the purpose of committing, or provoking another to commit, an unlawful act. And in so saying we are not to be understood as holding that the mere fact that a person has sufficient time and opportunity to leave the conveyance, and fails to do so, in every instance operates to sever the relation existing between him and the carrier. Where the question properly arises, such fact may be considered as bearing upon the question of his negligence, but of itself can not warrant an assault by the servants, nor relieve the carrier from liability therefor. W. St. L. & P. Ry. Co. v. Rector, 104 Ill. 296.

A person may be delayed in leaving the conveyance for many causes that will readily suggest themslves to the mind, perfectly excusable in themselves, and it would be too severe to hold that in such case the passenger subjects himself to a willful or wanton injury at the hands of the employes without any recourse upon the master.

Appellant further insists that the conductor acted in self-defense, and if so, it is a perfect answer for the railroad company, although he used unnecessary and unreasonable force in repelling the assault of the appellee.

Upon this branch of the case the court below, in substance, charged the jury, that if appellee was not a passenger and the conductor acted in self-defense, the appellant would not be liable; but if he was still such passenger and the conductor used excessive and unreasonable force in repelling an attack upon him by appellee, the company would be held responsible for injuries occasioned by such excessive force. Of this action of the court we can not see that the appellant has any just cause of complaint.

As we have seen, the carrier is liable for an assault and battery committed by its servants upon a passenger, and in a suit for damages for such wrong the carrier occupies the position of any other defendant in such action, and to escape the legal consequences, *prima facie*, flowing from such act of the servant, it must justify the act.

If the act of the servant in committing a naked assault upon, or other willful or malicious wrong to, one intrusted to his care and protection, be the act of the carrier, how can it logically or legally be said that the latter's justification is more extensive than that of the servant?

Where a passenger has, by his conduct, forfeited his right to further carriage and incurred the liability of being removed from the train, the carrier being under no further obligations to him than those arising from the dictates of a common humanity, the statute, which seems to be but declaratory of the common law, will not allow excessive or unreasonable force to be used in removing him. The law, while imposing upon the carrier the duty of maintaining good order and a

proper discipline upon the train, and conferring all the power and authority necessary to a proper performance of its duty in this regard, requires, as in all other cases, that the powers conferred should be exercised in a reasonable and prudent manner.

While authorizing the carrier to rescind the contract of carriage for certain misconduct of passengers, the penalty for such misconduct must not be enforced unreasonably or oppressively. Recognizing this rule, the defendant in its plea of justification, alleges certain disorderly acts of the appellee on the trip from Seneca to Morris, and that at Morris he attacked the conductor, and the conductor, acting under the statute, removed him from the car, doing no unnecessary injury or damage to him, and that these are the grievances and trespasses mentioned in the declaration. By this plea the appellant relies upon the alleged facts that the conductor was endeavoring to enforce the authority in him vested by the statute to remove the appellee from the train for his misconduct during the trip and for attacking him at Morris, and has made the allegation that no unnecessary damage or injury was done to appellee, a material averment under the statute, and if this averment fails to be established by the proof, under the replication *de injuria*, the whole defense made by the plea must fail. Harman v. Eads, 15 Mass. 347; Ayers v. Kelley, 11 Ill. 17; Gizler v. Witzel, 82 Ill. 322.

It might also be suggested that if the conductor used unnecessary and unreasonable force, it would be evident he was not a suitable person to put in charge of persons to whom the carrier had assumed the duty of protection against the unreasonable and unjustifiable acts of its servants.

It is urged that the damages found by the jury are excessive. The judgment is for $800, and if the jury found that the conductor made the attack upon him without provocation, as claimed by him, we can not say that the verdict indicates any passion, prejudice or partiality upon the part of the jury. The blow was a severe one, resulting in serious injury to the appellee, and certainly it can not be said that any rational person would place himself in the situation of appellee for any

such sum.   Where pain and suffering are recognized elements in assessing damages for personal injuries, there can be no certain rules for their admeasurement, and consequently the law has left the assessment to the sound judgment of the jury, guided by proper instructions from the court, and before a court should interfere with the findings by putting itself in the place of the tribunal primarily established by the law to determine this question, it ought to be well advised that such verdict is not the result of the calm, dispassionate judgment of the jury, but results from some improper motives or influences, and that injustice would be done if the verdict should be allowed to stand.

If, however, the appellee, as claimed by the appellant, un lawfully attacked the conductor to carry out his threat to "slug" him, and the verdict returned was based upon the fact that excessive force was used by him in repelling the assault, then we should be inclined to hold a much smaller amount would satisfy the law, and be a sufficient remuneration to him.   In such case, as a matter of fact, we should not be disposed to weigh the degree of force in golden balances in order to charge the master with the consequences of excessive and unreasonable force, used by the servant while protecting himself. A man who, to redress some fancied wrong or avenge some alleged insult, takes the law into his own hands, and wrongfully attacks another, does not entitle himself to any marked sympathy or consideration at the hands of either court or jury, and should only receive what the stern rules of the law will award him.

As the case will be tried by another jury, we refrain, at this time, from expressing any opinion as to the weight of the evidence introduced in support of the claims of the respective parties.

We do not deem it necessary to particularly notice the objections to plaintiff's instructions, as upon another trial they can be made to conform to the views herein expressed.

The judgment for the error mentioned will be reversed, and the cause remanded.

Judgment reversed.