### Samuel J. Hanson v. Urbana & Champaign El. St. Ry. Co.

1. DAMAGES—*Eighty-five Cents Held Inadequate for an Assault.*— The court reviews the evidence and holds that an award of eighty-five cents damages for the assault complained of is inadequate, and that the evidence demands substantial damages.

Hanson v. Urbana & Champaign El. St. Ry. Co.

2. CARRIERS—*Liability of, for Acts of Servants.*—By the contract existing between a carrier and its passengers the carrier guarantees the passengers against personal injury from its agents and servants in charge of its trains.

3. SAME—*Provocation as a Justification of an Assault on a Passenger by a Servant.*—In a suit by a passenger against a carrier based on an assault on the passenger by an employe of the carrier the court holds, even if the plaintiff did call the employe a vile name as claimed, that that did not justify the employe in making an assault on plaintiff.

4. SAME—*When the Relation of Carrier and Passenger is at an End.*—When a passenger arrives at his destination and safely alights from a street car on the public street the relation of carrier and passenger is at an end and the carrier is under no further obligation to the passenger so far as the contract of carriage is concerned, and is not responsible for an assault on him made by one of its servants.

5. SAME—*Provocation, in a Suit Against a Carrier for an Assault by a Servant.*—In a suit by a passenger against a carrier based on an assault on the passenger by a servant of the carrier, an instruction that the plaintiff can not recover without proof that the assault was unprovoked is improper. The fact that there was some provocation does not bar a recovery in such a case.

6. EVIDENCE—*Evidence of Threats Held Inadmissible in a Suit for Damages for an Assault.*—In a suit by a passenger against a carrier based on an assault on the passenger by a servant of the carrier it is improper to admit evidence that the plaintiff had threatened the employe some months previous that if he did not pay a certain bill the plaintiff would make him lose his job.

7. SAME—*That a Person who Committed an Assault was Arrested and Fined, in a Suit Based on the Assault.*—In a suit by a passenger against a carrier based on an assault on the passenger by a servant of the carrier it is improper to admit, over the objection of the plaintiff, evidence that the servant had been arrested and fined for the assault.

**Trespass on the Case,** for personal injuries. Error to the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the November term, 1897. Reversed and remanded. Opinion filed June 3, 1898.

T. J. SMITH and JOHN J. REA, attorneys for plaintiff in error.

We respectfully submit to the court that under the true rule of the law in this State it is the duty of the common carrier " to protect its passenger against assaults and other ill treatment by those employed by the carrier or under its control while on the way, to exercise the utmost vigilance

and care in maintaining order and guarding the passengers against violence from whatever source arising, and when the journey is completed to afford the passenger a reasonable opportunity to leave the car in safety." Cooley on Torts (2d Ed.), 773, Sec. 645.

" Having completed his journey the passenger should be allowed to peaceably leave the car." Chicago, R. I. & P. Ry. Co. v. Barrett, 16 Ill. App. 17.

" In this connection any person actually on the car, or in the act of getting on or off, is a passenger, and the company owes him the obligations which exist on the part of the carrier to its passengers." 23 Am. and Eng. Ency. of Law, 1004.

" Whatever may be the motive which incites a servant to commit an unlawful act toward the passenger, the carrier is liable for the act and its natural consequences." Chicago and E. R. R. Co. v. Flexman, 103 Ill. 546; Goddard v. Grand Trunk R. R. Co., 57 Maine, 202; Nieto v. Clark, 1 Cliff. 145; Craker v. Chicago and N. W. Ry. Co., 36 Wis. 657; Bryant v. Rich, 106 Mass. 180; Stewart v. Brooklyn and C. R. R. Co., 90 New York, 588; Keokuk N. L. P. Co. v. True, 88 Ill. 608; Sherley v. Billings, 8 Bush, 147; McKinley v. Chicago and N. W. R. R. Co., 44 Iowa, 314; New Orleans, St. L. and C. R. R. Co. v. Burke, 53 Miss. 200.

" The rule relieving a master from liability for a malicious injury inflicted by his servant when not acting within the scope of his employment does not apply as between a common carrier of passengers and a passenger. Such a carrier undertakes to protect the passenger against injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger." Stewart v. Brooklyn and C. R. R. Co., 90 N. Y. 588; Day v. Owen, 5 Mich. 520; Commonwealth v. Power, 7 Metc. 596; Pittsburgh, F. W. and C. R. R. Co. v. Hinds, 53 Pa. St. 512; Craker v. Chicago and N. W. Ry. Co., 36 Wis. 657.

Gere & Philbrick, attorneys for defendant in error.

The plaintiff became a passenger when he entered the defendant's car, but this relation ceased the moment he left the car and went upon the public street.

The street is not a station for a street railroad company, and it has no control over it.   It is not bound to guard or look after the safety of persons who may have been passengers on its cars after they go upon the public highway. Creamer v. West End St. Ry. Co., 156 Mass. 320 (31 N. E. Rep. 391); Central Ry. Co. v. Peacock, 69 Md. 257; 23 Am. & Eng. Ency. of Law, 1004, note 4.

The plaintiff having ceased to be a passenger when he left the car and went upon the public street, any assault committed by an employe of defendant was not within the scope of his authority, and the defendant would not be liable therefor.   Central Railway Co. v. Peacock, 69 Md. 257 (41 Am. & Eng. Ry. Cases, 239–240, note); Booth on Street Railways, Sec. 372; 14 Am. & Eng. Ency. of Law, 818, Sec. 5 and notes.

In order to hold a master liable for acts of a servant the act must be done within the scope of the authority given by the master, and if a servant quits the object for which he is employed, having in view other acts than his master's orders, pursues that which his own malice or unlawful desire suggests, he no longer acts within the scope of his authority, and the master is not liable.   Wright v. Wilcox, 19 Wend. 343; Isaacs v. Third Ave. R. R. Co., 47 N. Y. 122.

For a willful trespass defendant is not liable.   Wright v. Wilcox, *supra;* Richmond Turnpike Co. v. Vanderbilt, 1 Hill, 480; Mali v. Lord, 39 N. Y. 381; Fraser v. Freeman, 43 N. Y. 566; Chicago & E. R. R. Co. v. Flexman, 103 Ill. 546; LaFitte v. New Orleans, C. & L. St. Ry. Co., 12 L. R. A. (La.) 337.

" The doctrine of *respondeat superior* does not apply, simply from the circumstance that at the time when the injury was inflicted the person who inflicted it was in the employ of another.   But in order to make the master liable the act inflicting the injury must have been done in pursuance of an express or implied authority to do it; must be

incident to the employment." 2 Wood on Railroads, 1386, 1398, 1404.

"The master is not liable for an act committed by his servant after he has stepped aside from his employment to commit a tort.

Thus the act of a street car driver (motorman) in making an assault on a passenger who has just left the car and gone to the sidewalk for the purpose of making a complaint at the company's office against the driver is not a tort for which the employer can be held responsible, although the assault was prompted by a quarrel between the driver and the passenger before the latter left the car." Booth on Street Railways, Sec. 372.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

This is an action brought by plaintiff in error to recover damages for an assault and battery made upon him by one Daniels, a motorman in the employ of the defendant in error upon one of its electric cars, on which plaintiff in error was then a passenger.

On the 15th day of June, 1896, the defendant in error was operating a certain electric street car line, from Champaign, to Urbana, Illinois, upon which it carried passengers for hire. Plaintiff in error took passage and paid his fare from the former place to the latter. There were several other passengers on the car at this time. Plaintiff in error, with a gentleman by the name of Prather, was occupying a seat near the front end of the car, with but one seat between them and the front end of the car (which was turned facing them), where the motorman stood. The window in the front end of the car was open. William Daniels was the motorman, and with him was a man by the name of Kirby, whom he was teaching to operate the motor. Some time after the plaintiff in error had paid his fare, and the car was well on its way to Urbana, Daniels surrendered the operating of the motor to Kirby, and turning around, beckoned the plaintiff in error to come forward to the open window in the front end of the car. He complied with

Daniels' request, whereupon he commenced talking to plaintiff in error about an account that he had been trying to collect of Daniels, as a lawyer. The window in the front end of the car was down—open. Plaintiff in error leaned over to hear what Daniels had to say, and Daniels asked him what he was going to do about that debt. Plaintiff asked him what debt, and Daniels said that fifty cents a week or month. Plaintiff in error told him that he could not accept that, having waited this long, and that the justice had no authority to make such an arrangement, and he would have to go on with legal proceedings. At this time Daniels claims that plaintiff in error called him a s— of a b——, and he shoved him back in his seat. Plaintiff in error denies having used this language, and Kirby, who stood by the side of Daniels, testified he did not hear it, and Prather, who was only four or five feet from plaintiff in error, says he did not hear him use such an epithet. Daniels says he shoved plaintiff in error back in his seat; plaintiff in error says he struck him with his fist on the jaw and knocked him back in his seat. Prather and Mrs. Wood say that Daniels took plaintiff in error by the collar with one hand, and struck him in the face with his fist, and knocked him back in his seat by Prather.

Plaintiff remained in his seat until he arrived at his destination, Race street, Urbana, where he alighted from the car on the south side, with safety, in the public street. Daniels got off the car on the north side and went around the west end of the car, and while plaintiff in error was approaching the sidewalk, Daniels overtook him and struck him two or three blows, and they grappled each other and fell on the brick pavement, and then were separated by the deputy sheriff.

The declaration in this case contains two counts. The first count is for an alleged assault inflicted upon the plaintiff in error by the servants and employes of defendant in error, while he was being conveyed as a passenger from Champaign, Illinois, to Urbana, Illinois, in one of defendant in error's cars. The second count is for an alleged assault upon plaintiff in error by the servants and employes of

defendant in error, as he was leaving the car upon which he had taken passage, having arrived at his destination.

The case was tried with the intervention of a jury, and the jury found the defendant in error guilty, and assessed the damages for plaintiff in error at eighty-five cents.

The damages assessed by the jury, we think, are inadequate, as the evidence demands substantial damages.

The contract which existed between the defendant in error as a common carrier, and plaintiff in error as a passenger, was a guaranty on behalf of the carrier that plaintiff in error should be protected against personal injury from the agents and servants of defendant in error in charge of the train. The company placed the motorman in charge of this train. It alone had the power of removal, and justice demands that it should be held responsible for his wrongful acts toward passengers while in charge of the train. "Any other rule might place the traveling public at the mercy of any reckless employe the railroad company might see fit to employ. And we are not inclined to establish a precedent which will impair the personal security of the passenger." Chicago & E. R. R. Co. v. Flexman, 103 Ill. 546; Keokuk Northern Line Packet Co. v. True, 88 Ill. 608; Coggins v. Chicago & A. R. R. Co., 18 Ill. App. 620.

From the evidence, we think the plaintiff in error made out his case as set out in the first count of his declaration, under the law as laid down in the above well established rule. It appears from the evidence that plaintiff in error took passage and paid his fare from Champaign to Urbana on defendant in error's train, and after he had got well on his journey, conducting himself in an orderly manner, he was called by Daniels, the motorman of defendant in error's train, to come to him. Upon plaintiff in error complying with his request, he commenced conversing upon a subject of his own choosing. While they were talking, he struck him a blow in the face without justifiable provocation, in the presence of the passengers. Even if plaintiff in error had been guilty of calling him the vile name he claims he did that would not justify him in inflicting upon him the blow

that he did.   Chicago & E. R. R. Co. v. Flexman, *supra;* Chicago, R. I. & P. R. R. Co. v. Barrett, 16 Ill. App. 17; Coggins v. Chicago & A. R. R. Co., *supra.*

We hold, under the evidence in this case there should be no recovery under the second count in the declaration.   When the plaintiff in error arrived at his destination and safely alighted from the car on the public street, that then the contract of carrier and passenger was at an end.   The carrier was under no further obligations to him as far as the contract of carriage was concerned.   The conflict between the plaintiff in error and Daniels at Race street, after plaintiff in error had arrived at his destination, and left the car, was some twenty-five feet from the car and near the sidewalk. Daniels, when plaintiff in error was alighting from the car, was on the opposite side from him.   There was no guaranty under the contract, from molestation by the carrier after the passenger had left the car and entered upon his journey homeward.

It is urged error, that the trial court permitted, over plaintiff in error's objection, the defendant in error to prove that plaintiff in error had threatened Daniels, some months prior to the conflict, that if he did not pay a certain bill he held against him for collection, he would make him lose his job.   We think this evidence was immaterial, and the jury might have been misled by it, and the objection should have been sustained.

The defendant in error was allowed to prove, over the objection of the plaintiff in error, that Daniels had been arrested and fined for both these assaults that he had made on plaintiff in error, and had paid in fines and costs, the sum of twenty-five dollars.   This evidence should not have been admitted.   It was not proper in mitigation of damages. The defendant in error did not pay and was under no obligation to pay the costs or fines in those cases.   The parties to the criminal prosecutions were not the same as in this suit.   The plaintiff in error herein was in no way interested in either of the judgments entered in the criminal cases.

It is contended that instructions three to eleven inclusive,

given on behalf of defendant in error, and the modification of plaintiff in error's first and second instructions is error.

The instructions three, six, seven, eight, nine and ten, given on behalf of defendant in error, each relate to the cause of action stated in the first count of the declaration. The rule announced in these instructions is, that if the assault grew out of a personal difficulty between plaintiff in error and an employe of defendant in error, about their personal affairs, or if plaintiff in error attempted to transact private business between him and such employe on defendant in error's car, and that such difficulty and the transaction of such business had no relation whatever to the carrying of him as a passenger, but was an entirely private matter between him and such employe, then the defendant in error would not be liable for such assault. The hypothesis stated in these instructions is not sustained by the evidence, nor is it sound in law. There is no evidence that the plaintiff in error attempted to settle any business between him and Daniels, or that he sought any difficulty with him, but was conducting himself in an orderly manner. When Daniels asked him to come to the window he arose and stepped to the window, and after a short conversation Daniels struck him. Daniels, by calling him to him, and engaging him in conversation for a few moments, did not suspend the guaranty the defendant in error had, to be carried to his destination without molestation or assault from the agents and employes of defendant in error. The assault of the motorman upon the plaintiff in error was a breach of his contract, for a safe passage to his destination, with defendant in error. These instructions should not have been given.

As instructions four, five and eleven complained of, relate to the second count, and we have held there could have been no recovery on that count upon the evidence in the record, an examination of these instructions is unnecessary.

The modification of plaintiff in error's instructions two and three, was, in effect, that plaintiff in error could not recover unless he proved the assault was unprovoked by him.

This, we think, is incorrect. The fact there was some provocation does not bar a recovery. Chicago & E. R. R. Co. v. Flexman, 103 Ill. 546; Chicago, R. I. & P. Ry. Co. v. Barrett, 16 Ill. App. 17.

Plaintiff in error claims that he was unduly prejudiced by the refusal of the court to give his tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and one-half, nineteenth and twentieth instructions. Those containing the law as applicable to the facts in the case were contained in those given; the others were properly refused.

For the errors herein indicated, the judgment of the Circuit Court is reversed and the cause remanded.