[No. 6794.   Decided November 21, 1907.]

MATT BLOMSNESS, *Appellant*, v. PUGET SOUND ELECTRIC
RAILWAY, *Respondent*.[1]

CARRIERS—PASSENGERS—TERMINATION OF RELATION—MASTER AND
SERVANT—TORT OF SERVANT.   A street railway. company is liable for
an assault committed by a conductor upon a passenger who, being
entitled to a transfer, had stepped from the car to the street, as
commanded to do by the conductor, and was requesting the con-
.ductor for the transfer at the time of the assault; as he had not
been carried to his destination and the relation of carrier and pas-
senger had not terminated.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered December 4, 1906, upon granting
a nonsuit at the close of plaintiff's case, dismissing an action
for personal injuries sustained by a passenger.   Reversed.

*Jackson Silbaugh*, for appellant.

*James B. Howe* and *Hugh A. Tait*, for respondent.

DUNBAR, J.—This is an action for personal injuries. alleged
to have been sustained by the appellant by being struck in the
face and on the head with a lantern, in the hand of a conductor
who had charge of a train of cars on one of which the appel-
lant was at the time a passenger.

The complaint alleges, that on July 4, 1906, the appellant,
with his wife and two children, went on board one of defend-
ant's passenger trains at Tacoma, Washington, to be trans-
ported to Seattle; that he there paid the conductor the usual
and customary fare for such transportation; that under the
rules and regulations of the company, he was entitled to a
transfer from Seattle to Ballard; that when they arrived at
Seattle, the conductor struck the plaintiff in the face with a
lantern which he was using in his business and work as con-

[1]Reported in 92 Pac. 414.

ductor, and inflicted the injury for which damages are sought; that the only reason why the conductor struck the plaintiff was because the plaintiff asked the conductor for a transfer over the Ballard line.

The defendant denied the material allegations of the complaint, and alleged an affirmative defense which was denied by the plaintiff. After plaintiff had introduced his testimony and rested his case, defendant made a motion of nonsuit, claiming that the relation of common carrier and passenger had ceased to exist at the time the assault was committed. The court granted the motion, and judgment of nonsuit was entered.

The testimony of the appellant was to the effect that, at the time he paid the fare to the conductor, he asked him for a transfer on the Ballard car line, which he was entitled to under the rules of the company, and the conductor replied, saying, "I will give you that between Georgetown and Seattle;" that the appellant did not see the conductor as he was issuing transfers, and as the train rounded the corner of Yesler Way in Seattle and while the conductor was standing on the back platform of the car upon which the appellant was situated, the appellant again asked for a transfer on the Ballard line, whereupon the following colloquy ensued:

"He (the conductor) says, 'Why didn't you ask for a transfer when I was in the car to give a transfer?' 'Well,' I says, 'I didn't see you.' Then he told me to stand out to one side, because the train came to a stop at that time, and he was going down on the ground. Q. And then when it came to a stop what happened? A. He says to get out of the road for the passengers, and I stepped off, and I told him then—I says that I was told— Q. When you stepped off where did you go with reference to the train? A. I stood right by the side of him, right close. Q. Where was he? A. He stood on the step there, or on the side of the step—the handle of the car going in the— Q. How close to the car? A. He stood right up close to it, so he put his coat right up against the side, helping the passengers. Q. Off the car? A. Yes, sir. Q. And then you said to him what? A. I said to him that I was told that I was going to get a transfer between Georgetown and

Seattle, and I says, 'I didn't see any of you in there.' He says, 'Don't bother me; I ain't got any time now,' and so I knew—he was speaking in a very angry tone. Q. What was he doing at that time when you were talking to him? A. He was helping the passengers coming off of the car. Q. Well, then what happened between you and him after that? A. When they were all out I said to him, 'Am I entitled to a transfer on the Ballard line, or am I not?' and he says, 'Damn it, I told you before. Q. He says what? A. He swore. Q. What did he say? A. He says, 'Damn it, I told you before,' he says, 'that I was in the car there,' he says, 'and why didn't you open your face then?' and I turned around and I says to him, 'I didn't see you in the car, and I don't believe you were in there,' and so I turned around and was going to the car, and he says, 'What is that?' and he came for me, and kind of raised up his left hand and struck me on the shoulder a little bit, and just only turned me around, and he says, 'What is that?' and I says, 'I didn't see you in the car, and I don't believe you were in there.' He says, 'Don't say that to me,' he says, and then he hauled off with his lantern and struck me right over the head. Q. With what? A. With a lantern, so the glass and everything was all over my face and I fell down."

This is the substance of the plaintiff's testimony.

The pertinent question in this case is whether the appellant was a passenger at the time of the alleged assault. Upon the determination of this question depends the other question, whether the conductor was acting within the scope of his employment at the time the assault was made. If he was, the company was responsible for his tortious acts; if he was not, it cannot be held responsible, for it is well settled that the liability of the master for intentional acts which constitute legal wrongs can only arise when the acts complained of are within the apparent scope of the master's business. It is equally well settled that, within such scope, the master is liable, for the contract on the part of the company is to safely carry its passengers and to compensate them for all unlawful and tortious injuries inflicted by its servants. It is contended by the respondent, and that was evidently the view

taken by the trial judge, that in this instance the appellant
had ceased to be a passenger at the time the assault was made
upon him; and many cases are cited to sustain such conten-
tion. But an investigation of these cases convinces us that
the decisions rendered were based upon an entirely different
state of facts from the facts proven in this case. Booth on
Street Railway Law, p. 445, is quoted as follows:

"But the general rule, applicable alike to general traffic
roads and street railways, that all parts of their stations, plat-
forms, and the approaches thereto must be kept in a safe con-
dition, cannot be extended so as to include the public street
in which passengers are received and discharged, and over
which the street railway company has no control. The street
is in no sense a passenger station for the safety of which the
company is responsible. When a passenger steps from a car
upon the highway and terminates his relations and rights as
a passenger, the company is not responsible to him as a
carrier for the condition of the street, or for his safe passage
from the car to the sidewalk."

This may be conceded to be the law, and it may be conceded
that the distinction made between street railways and the ordi-
nary steam railroad is a just one. The learned author further
on bases the distinction upon the ground that the contractual
relation is ended when the passenger alights from a street car,
and that if he again boards the car he is responsible for an-
other fare under another contract. But this reasoning is not
applicable to the facts proven in this case, for it must be con-
ceded that, under the contract made by the respondent, the
appellant had not arrived at his destination when he alighted
from the car in the city of Seattle, for he had paid for trans-
portation to the city of Ballard. It was necessary for him to
alight for the purpose of changing cars, and to receive the
benefit of his contract it was necessary for him to travel out-
side of the car between the car from which he alighted and
the Ballard car. The trip was a continuous one, and the fact
that he had to change cars could not in justice or fairness

effect his rights as a passenger. The learned author just quoted, after stating the rule, at page 503, says:

"Therefore, the master is not liable for an act committed by his servant after he has stepped aside from his employment to commit a tort. Thus the act of a street car driver in making an assault on a passenger who had just left the car and gone to the sidewalk, for the purpose of making a complaint at the company's office against the driver, is not a tort for which the employer can be held responsible, although the assault was prompted by a quarrel between the driver and the passenger before the latter left the car."

At first blush this quotation might seem to sustain, in a measure the respondent's contention. But the author cites, to sustain the text, *Central R. Co. v. Peacock*, 69 Md. 257, 14 Atl. 709, 9 Am. St. 425. An examination of that case shows a state of facts entirely different from those in the one at bar. There the plaintiff, after having been insulted by the conductor, got off at a stopping place, saying that he was going to the company's office to report the conductor. The car went on some distance after the plaintiff alighted, when it was stopped by the conductor, who left it, went across the street, and intercepted the plaintiff on the public sidewalk upon which he had been walking for a block or more, and the assault was there committed. The court, in the course of its comment, says:

"After he had alighted and walked a square, could he resume his place in the car without paying another fare, without the assent of the conductor? Would the conductor be justified in omitting to charge another fare? We think not. Had he remained in the car until the stables were reached and the horses were being changed, the carrier would have understood his journey was not completed, and whilst the horses were being changed he would still have been regarded as a passenger, and would have been entitled to protection as against the employes, if he then had gone into the office to execute his declared purpose to report;"

citing several cases to sustain that doctrine, which the court said was properly laid down.

"Those cases [said the court] only establish that while the car or boat may actually stop, the passenger need not confine himself to the boat, car, or vehicle in order to preserve his relation and rights as a passenger.   But that is not the case here."

It will be seen that the case cited, which would have sustained the right of plaintiff to recover, cannot be distinguished in principle from the case at bar.   In one instance, the horses were to be changed; in the other, cars were to be changed. In the one, the plaintiff had the privilege of leaving the car and still maintaining his rights as a passenger; in this instance, he was compelled by the necessities of the case to alight from the car; therefore making a much stronger case in favor of the plaintiff than the cases approved by the court in the case cited by the respondent.

The next case cited, viz., *Hanson v. Urbana etc. R. Co.*, 75 Ill. App. 474, was where the plaintiff while traveling on the car had an altercation with the motorman about a personal matter entirely disconnected from the car service, and was assaulted by the motorman.   After the assault, plaintiff remained in his seat until he arrived at his destination, when he got off with safety on the public street, and while he was approaching the sidewalk the motorman got off on the opposite side of the car, followed him up, and again assaulted him. The action brought consisted of two counts, one for the assault made while on the car, and the other for the assault made on the street, and the appellate court allowed him to recover on the first count only, saying:

"We hold, under the evidence in this case there should be no recovery under the second count in the declaration.   When the plaintiff in error arrived at his destination and safely alighted from the car on the public street, that then the contract of carrier and passenger was at an end."

There is certainly no parallel between the two cases.   In this case the plaintiff had *not* arrived at his destination.   On the contrary, it was his request to be taken to his destination

under the terms of his contract which was the subject of the controversy.

The next case, viz., *Palmer v. Winston-Salem R. & Elec. Co.*, 131 N. C. 250, 42 S. E. 604, is also a case where the plaintiff had arrived at his destination and had gotten off the car and deposited his bundles on the sidewalk, then returned to the car and resumed the altercation with the motorman, and again got off the car, when the motorman followed him up and assaulted him. No comment seems to be necessary on this case. An excerpt from the opinion of the court, however, shows what the decision would have been if the facts presented had been similar to the facts in this case.

"If the plaintiff had been a passenger, or his passage had not been fully terminated, or if, when he left the car at his destination, the employee had assaulted him, the defendant concedes that there would be no question as to the liability of the company;"

citing *Daniel v. Petersburg etc. R. Co.*, 117 N. C. 592, 23 S. E. 327; *Williams v. Gill*, 122 N. C. 967, 29 S. E. 879; *Strother v. Aberdeen etc. R. Co.*, 123 N. C. 197, 31 S. E. 386. But, said the court: "Here the passage had terminated for the passenger had deposited his bundle and then returned to the car." And without specially reviewing the other cases cited, we find them all to be of the same character as those above noticed.

A case more directly in point is *Wise v. Covington etc. Street R. Co.*, 13 Ky. Law 110, 91 Ky. 537, 16 S. W. 351, where it was held that a street railway company is liable for assault by the driver upon a passenger after the latter has left the car on account of the insults of the driver, where the assault was a direct continuance of the abuse begun on the car. In this case, as above indicated, appellant had not arrived at his destination, and the assault was a direct continuance of the controversy begun on the car.

Respondent seems to place some stress upon the fact that there had been no angry words passed between the appellant

and the conductor on the car. The fact that the appellant in demanding his rights had demeaned himself in a gentlemanly manner, and had not precipitated a row in the car, should not militate against his right to recover. He did only what he was compelled to do to urge his rights. When he made a request for the transfer, the conductor told him to get off the car and out of the way as he was busy helping the passengers off. This he did. He did not leave the car; did not show any inclination or make any intimation that he was intending to leave it, but remained and persistently demanded his rights. We think, under all authority and in accordance with principles of right, that the appellant should be deemed a passenger at the time of the assault, and should be allowed to recover.

The judgment will be reversed, with instructions to overrule the motion for nonsuit.

HADLEY, C. J., RUDKIN, MOUNT, FULLERTON, and ROOT, JJ., concur.