[No. 8015.  Department Two.  August 25, 1909.]

RAGNHILD MARGARETHA BUGGE, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

CARRIERS—NEGLIGENCE—NOTIFICATION TO PASSENGERS ALIGHTING—EVIDENCE—RES GESTAE. In an action against a carrier for negligently instructing a passenger to walk across a trestle to transfer over a washout to another car, evidence that such a notification was given to another passenger, and communicated to the plaintiff, is admissible as part of the *res gestae*, although not given in plaintiff's presence, where the car stopped at the washout and many passengers got out and started to walk across the trestle, and there was conflict in the testimony as to the notification.

CARRIERS—INJURY TO PASSENGER—NEGLIGENCE—INVITATION TO GO ON TRACK. It is negligence, warranting a recovery by a passenger, run down on a long trestle, for the street car company to invite passengers to transfer over a washout by crossing the trestle in the dark, with the assurance that no cars would cross the trestle that night, and while passengers were walking on the trestle to run them down by a car going in the opposite direction.

[1]Reported in 103 Pac. 824.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In such a case, the contributory negligence of the passenger was for the jury, where she had no notice of the height of the trestle some distance away, there was necessity of avoiding delay, and many other passengers were crossing.

SAME—WHO ARE PASSENGERS—INVITATION TO GO ON TRACK—TRESPASSERS. A passenger who took a street car to a certain destination, without being informed of a washout preventing the car from making the trip, is a passenger while walking across a trestle, on the invitation of the conductor, in order to transfer over the washout to a car at the other end of the trestle, regardless of what agency caused the washout, or of the fact that no written transfer was issued; and instructions that she was a trespasser are properly refused.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $15,000 for personal injuries is not excessive, where the plaintiff, a single woman, thirty-one years old, earning about $75 a month as a housekeeper, was run down by a street car, her left leg cut off five inches below the knee, and her doctor's bill and other expenses amounted to $500.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered November 4, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger run down by a street car. Affirmed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*Totten & Rozema* (*John E. Humphries*, of counsel), for respondent.

MOUNT, J.—The plaintiff recovered a judgment against the defendant for $15,000, on a verdict of a jury in the court below, on account of personal injuries. Defendant has appealed.

The facts are in substance as follows: The appellant was operating a street car line in the city of Seattle. This line extended from the business portion of the city to a part known as Ballard. The line was known as the Ballard line. It crossed a strip of tide lands on a trestle known as the Salmon Bay trestle. This trestle extended north and south and

was about two thousand two hundred feet in length. Late in the afternoon. of November 24, 1907, a city water main broke a short distance north of the south end of this trestle. The water from the main washed the foundation from one of the bents, rendering the trestle at this point unsafe for cars to cross, but persons could cross over on foot with safety. The trestle at this point, and for a short distance on each side thereof, was a foot or two above the level of the ground. From about the point of the washout the trestle extended up grade some five or six hundred feet to the highest point, where it was about twenty-eight feet in height. At this point it made an overhead crossing for a steam railway. It then gradually descended to the north end. The ties were about seven inches apart. There was no walk way for pedestrians.

At about 4:30 in the afternoon on November 24, 1907, the respondent, accompanied by her brother and a lady friend and two other gentlemen friends, took passage on one of appellant's cars, intending to visit friends in Ballard. They did not know of the washout. They paid their fare and were carried to the trestle at the point of the washout. There the car stopped, and the passengers were informed that the car would go no further on account of the washout. The respondent and her lady friend remained seated in the car while her brother and the two other men of the party went outside. They saw the condition and asked the conductor what they should do. They testified that the conductor told them that they could return to Seattle and there be transferred to another line by which they could go to their destination, or that they might go across the trestle and take another car on to Ballard; that no car would cross the trestle that night. Respondent's brother then went into the car and told respondent the substance of the conversation with the conductor. Thereupon respondent and her brother and lady friend went out of the car and looked at the condition, and, while standing near the car, respondent testified that she

heard the conductor say that the passengers could transfer back to Seattle or go across the trestle and take a car on the other side; that no car was coming across that night. Respondent and her brother and friends then talked among themselves as to what they should do. It was suggested that they would not have to come back that way, but could take a Fremont-Ballard car back another way, and that they would only have to walk across the trestle once. They thereupon decided to walk across and take a car on the other side. It was then between five and six o'clock and quite dark, almost as dark as it gets, the sky being cloudy. Looking toward the horizon, they could see the trestle one hundred to six hundred feet ahead. They could see the ties at their feet, but they could not see, looking down, more than about ten feet. Neither respondent nor her brother knew how long or how high the trestle was, although they had ridden over it on the cars. A number of the passengers had started to walk across the trestle before respondent and her party started, the number being estimated at from eight to twenty. Respondent and her party walked faster than the others and overtook and passed many of them.

When respondent and her companions had gone about five hundred feet, they saw a car coming toward them from the Ballard side. Two of the men hurried forward to meet and stop the car. They were in the middle of the track in the glare of the headlight, and shouted and waved their arms to stop the car, until the car came within a few feet of them. It did not stop, and they were compelled to jump onto a slab pile at one side of the track in order to avoid the car. All the party succeeded in getting off the track, except respondent. She was run down by the car, which cut off her left leg about five inches below the knee. The accident happened near a mill which stood beside the trestle near the middle thereof. The night watchman at the mill saw the car coming, and also saw the party upon the trestle, and attempted to hail the car by shouting. He threw a tin bucket against the car. Pas-

sengers in the car heard the shouting and heard the bucket strike the car, but the motorman did not stop in time to avoid the accident. Passengers testified that the striking of the bucket against the car and the jar of running over the respondent were about simultaneous. At the time of the accident, the respondent was thirty-one years old, unmarried, and earning as housekeeper $35 per month, besides her room and board, estimated at $30 to $40 per month. Her doctor's bills and other expenses for which she became liable amounted to something more than $500.

The negligence alleged was, that respondent, not knowing of such washout, became a passenger upon one of the cars of the appellant with intention of going to Ballard; that when the car containing respondent reached the south end of such trestle, at about 5:30 o'clock in the afternoon, she and other passengers were informed by appellant that said car could proceed no further on account of such washout, and were carelessly and negligently instructed and permitted to cross said trestle for the purpose of meeting another car which would convey them to their destination; that the respondent, not knowing the danger involved in such proceedings, acting upon such instruction and permission, walked on and over said trestle and, while walking thereon, and about six hundred feet from the south end thereof, appellant, knowing that respondent was on said trestle, so negligently ran its said car southward bound, which was the car that was intended to meet respondent, that it ran against and over her, cutting off her left leg below the knee.

The first four assignments of error are to the effect that the court erred in permitting the companions of respondent to testify to conversations they had with the conductor, and to the fact that they communicated these conversations to the respondent. For example, respondent's brother testified as follows:

"I went out of the front door and I took a look around to see what had happened; saw the washout and conditions; then

I went to the conductor who was standing about near the middle of the car and I asked him . . . what we should do, and the conductor told me we could transfer back to Seattle or go across and take another car to our destination. With that information . . . I went back into the car and I told my sister and her companions what the conductor told me, and together we went out . . . I told my sister that there was a washout on the line so the car could not go across, and we would have to transfer back or go across the trestle and take the car there and go to Ballard."

It is claimed that this evidence was improperly admitted because it was *res inter alios acta,* and the conductor would not necessarily give the same instructions to male and female passengers; because it was but a mere expression of the opinion of the conductor's instructions; because Mr. Bugge did not communicate the exact instructions he received from the conductor; because the advice of Mr. Bugge was the act of a fellow passenger for which the appellant was not responsible; and because the statements of Mr. Bugge as to what the conductor told him were mere hearsay. We think none of these objections is sufficient to make the evidence inadmissible. The complaint alleged:

"That the respondent and other passengers on said car were notified by the defendant that said car could proceed no further . . . and said defendant . . . invited, instructed and directed . . . them to cross said trestle for the purpose of meeting another car which would carry them to their destination," etc.

These allegations were denied. When the car came to a stop and could proceed no further, naturally some notification was due to the passengers, and if any notification was given, either generally and openly or privately, such notification was a part of the *res gestae* and could be proved the same as any other fact. It was certainly explanatory of the conduct of the passengers. If the conductor, when the car stopped, had proclaimed to all the passengers on the car that the car would go no further but would return to the city, and that

passengers desiring to continue their journey might alight and walk across the trestle to the other end, where they would meet a car and continue their journey, such declaration would certainly be admissible in evidence as a part of the *res gestae*, for the purpose of explaining the reason for persons alighting and being upon the trestle. The fact that such declaration was given upon inquiry and communication from one passenger to the other, and not by proclamation, would make the declaration none the less *res gestae*, and would be as binding as if announced generally so that all might hear. The fact of the declaration and notice to the passengers would control their conduct, and not the manner of it. If the conductor stood at the inside of the car and told the passengers as they attempted to leave the car "not to go on the trestle but wait for the transfer that would come; that the transfer car would be there soon. I warned the passengers . . . not to go on the trestle until the transfer car arrived, and it would likely be there at any moment," evidence of such warning would certainly be admissible as a part of the *res gestae* to show that the company was not negligent in permitting passengers to alight in a dangerous place. On the other hand, if passengers were invited to alight in a dangerous place, such invitation, if extended privately and communicated to others, would be admissible to show negligence on the part of the company and want of it on the part of the passenger. These were the conditions in this case. The conductor testified, as stated above, that he did warn the passengers to wait for a transfer and not to go on the trestle until the transfer arrived. The respondent and her witnesses stated that they were invited to cross over on the trestle to the other end. The facts, of course, were for the jury to determine.

It is argued by appellant that the evidence fails to disclose any negligence on the part of the company, and that it shows inexcusable negligence on the part of the respondent. Both of these positions depend of course upon whether

the respondent was rightfully upon the railway track, and whether the danger was so apparent that a reasonable person would not have undertaken to cross the trestle in the night-time. If the evidence of the respondent and her witnesses is to be believed, the company was negligent in inviting the passengers to cross the trestle and then running them down by a car which respondent was informed would not cross that night. Having invited the respondent to walk across the trestle, it was clearly the duty of the company to so run its cars as not to injure her while she was on the trestle with no means of escape. Whether the danger was so apparent that a reasonable person would not attempt to cross in the night, was also a question for the jury to consider with all the attending circumstances. The fact that respondent could not see how high the trestle was; the fact that it was necessary to walk across if she would avoid delay; the fact that she was invited by the conductor to cross and was informed by him that no car would be over that night; the fact that other passengers were crossing; were all circumstances which would tend to convince a reasonably careful person that she might cross with safety, and were proper to be considered by the jury. We are not disposed to say, under these circumstances, that the jury might not reasonably conclude that the invitation was given, and that respondent did not unreasonably expose herself to danger. The trestle was apparently safe enough but for the fact that the car came down upon them. It seems to us that the motorman on this car should have seen the party upon the track in time to have stopped his car. If he did not know that the trestle was out of repair, he certainly should have had his attention attracted by the shouting of the respondent's companions so that he could have stopped his car before he ran them down. If he knew the track was out of repair within five or six hundred feet from where he then was, it was inexcusable for him not to see the respondent in time to stop. We are satisfied that the question of negligence was for the jury.

The court when instructing the jury defined what facts would constitute a person a passenger, and defined the degree of care owing by a carrier to its passengers, and then said:

"And in case of a break in the line of transportation caused by washouts or other agencies of that kind, and it becomes necessary for passengers to be transferred from one car to another to get over the break, the relationship of passenger and carrier continues during the progress of transferring from one point to another over the break, and it is the duty of the carrier to exercise the same degree of care to passengers while being transferred from one car to another, from one side of the break to another, as it is while actually on board the car."

It is argued by the appellant that, even if the conductor instructed the respondent to walk across the trestle, it cannot be held that she was a passenger while so doing. We think both reason and authority generally hold that she was a passenger. Her destination was Ballard. The car was supposed to run through to her destination. She was not informed otherwise. The company undertook to carry her to that place and was, of course, bound to do so. It gave her the option of going on by walking across the trestle or of going around another way. She remained a passenger under either option. If she assumed the risk of apparent dangers in walking the trestle, the company was in reason bound to exercise such care as not to run her down by a car about which she did not know and which she could not avoid. She did not assume such danger. The authorities also hold that the relationship of passenger continued in such circumstances. *Dwinelle v. New York etc. R. Co.*, 120 N. Y. 117, 24 N. E. 319, 17 Am. St. 611, 8 L. R. A. 224; *Jamison v. San Jose R. Co.*, 55 Cal. 593; *Conroy v. Chicago etc. R. Co.*, 96 Wis. 243, 70 N. W. 486, 38 L. R. A. 419; *Chicago & Alton R. Co. v. Winters*, 175 Ill. 293, 51 N. E. 901; *White v. Seattle, Everett & Tacoma R. Co.*, 36 Wash. 281, 78 Pac. 909, 104 Am. St. 948; *Blomsness v. Puget Sound Elec. R. Co.*, 47 Wash. 620, 92 Pac. 414, 17 L. R. A. (N. S.) 763;

*Citizens' Street R. Co. v. Merl,* 134 Ind. 609, 33 N. E. 1014.

Whether the break was caused by the railroad company or by some other agency can make no difference. Nor does it change the rule that no written transfer was issued. If it was understood that the destination of the passenger was reached when she alighted from the car at the point of the break, of course the relation of passenger ended at that point. But there seems to be no dispute that the company undertook to carry the respondent to Ballard, and that Ballard was the destination of the respondent, and not the place where she alighted to make the transfer. She was given the choice of two ways, but the relationship of carrier and passenger continued either way to the destination.

The court was requested to instruct the jury that the respondent was a trespasser upon the trestle, and that appellant owed the duty of reasonable care only to avoid injuring her after she was discovered. Whether she was a trespasser or not depended upon the fact whether she was invited there by the conductor, as she testified, or whether she was notified to await a car and not go upon the trestle. This question was, therefore, for the jury, and they were properly instructed upon it. We find no error in the instructions.

Appellant also contends that the verdict is excessive. We are not agreed under the facts disclosed by the evidence that it is excessive, and therefore decline to make any reduction. The judgment must therefore be affirmed.

Rudkin, C. J., Crow, Parker, and Dunbar, JJ., concur.·