[No. 15124.   Department One.   February 28, 1919.]

KITTIE MILLER, *as Administratrix etc., Respondent,* v.
NORTHERN PACIFIC RAILWAY COMPANY,
*Appellant.*[1]

RAILROADS (66)—OPERATION—ACCIDENTS AT CROSSING—CONTRIBU-
TORY NEGLIGENCE—DUTY TO STOP, LOOK AND LISTEN.  The driver of
an auto truck is guilty of contributory negligence, precluding recov-
ery for his death, where he drove upon his farm crossing in front
of a rapidly approaching passenger train, in the daytime, having a
clear view of the train upon a straight track, and did not at any
time stop, look or listen.

SAME (62) — OPERATION — ACCIDENTS AT CROSSING — PROXIMATE
CAUSE—LAST CLEAR CHANCE.  Where the driver of an auto truck
drove upon a farm crossing in front of a rapidly approaching pas-
senger train, in the daytime, having a clear view of the train, upon
a straight track, and did not at any time stop, look or listen, the
doctrine of last clear chance to avoid the accident does not apply,
on the theory that his truck had to wait upon a parallel track upon
which a freight train half a mile away was approaching, where such
train was so far away as not to be a factor, and the trainmen had
no reason to believe that the truck, which was moving slowly, would
not come to a stop and wait.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered May 27, 1918, upon
the verdict of a jury rendered in favor of the plain-
tiff, in an action for wrongful death, after a trial on
the merits.  Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for
appellant.

*Gordon & Easterday,* for respondent.

TOLMAN, J.—This action was brought to recover
damages for the death of John J. Miller, who was
killed at a private railroad crossing on his farm, about
a half mile south of the town of Sumner, in Pierce

[1]Reported in 178 Pac. 808.

county, Washington, on the afternoon of February 4, 1918. From a verdict and judgment against it, appellant brings this case here for review.

The facts appear to be substantially as follows: Appellant maintains a double-track main line of railway between the towns of Puyallup and Sumner, passing through the Miller farm. The farm house is on one side and the barns on the other side of the track; so that the crossing is used considerably and at all hours by persons employed upon the Miller farm. The train which caused Mr. Miller's death was a regular one, was on time, and left Puyallup at 4:16 p. m., being due in Sumner at 4:20 p. m. Wallace Hoyle, an employee of Miller, had driven an auto truck loaded with baled hay from Puyallup, had stopped in the road which parallels the railroad right of way in front of the Miller house, and Mr. Miller had gotten into the driver's seat; and with Hoyle seated beside him at his right, he drove the truck through the gate, and turning toward the right proceeded to climb the approach and cross appellant's tracks. The train was then approaching from the south in full view, at a speed of approximately forty miles an hour, on a perfectly straight track. The evidence is in conflict as to whether or not the whistle had just been blown at the whistling post a few hundred feet south of the crossing, and likewise as to whether or not the bell was ringing.

It is pleaded, and evidence was introduced to show, that a freight train, south-bound, on the opposite or westerly track, was just about leaving Sumner, and at the time of the accident was distant some five hundred to eight hundred yards from the place where the accident occurred; but the speed at which it was traveling is not shown. In its progress, the auto truck

first came upon the track over which the freight train would pass; and it seems to be conceded that there was not room between the two tracks for the truck to stand in safety. Mrs. Hoyle and her son, who were eye-witnesses, testified that they were standing on the porch of the Miller house, saw and heard the approach of the passenger train, which consisted of an engine, tender, and four coaches only; and that, as the truck reached the westerly or south-bound track, the train was distant from the crossing about two and a half city blocks; that the truck proceeded without stopping onto the easterly or north-bound track; and that, an instant before the impact, Hoyle opened the door of the truck and made a movement indicating an intention to get out.

The engineer and fireman, who were called as respondent's witnesses, testified that the track is straight for a distance of approximately half a mile south from the crossing; that, after rounding the curve onto the straight track, the fireman got down and proceeded to fire the engine; and that, as he stepped up toward his seat, after putting in the fire, at a distance of one hundred and seventy-five to two hundred feet from the crossing, he first saw the truck, which was then proceeding toward the track occupied by the passenger train, and shouted a warning to the engineer, who immediately applied the emergency brakes and used his best efforts to bring the train to a stop. The engineer, because of his position and the projection of the engine and boiler ahead of him, did not and could not see the truck as it approached from his left until just an instant before the impact, when the front end of the truck, passing over the track occupied by the train, came into his view. The truck appears to have been traveling slowly at

all times, two or three miles an hour, according to Mrs. Hoyle's testimony, and there seems to be no doubt that it could have been stopped almost instantly.

During the trial an amendment to the complaint was permitted which alleged that appellant's employees in charge of the locomotive saw the deceased approaching the tracks when he was still six or eight feet west of the west rail of the westerly track, and that it should have been apparent to such employees that the deceased was in ignorance of the approach of the north-bound train and intended to pass on over the tracks; and that they might, with the means then at hand, have given such warning by sharp blasts of the whistle, by ringing the bell or other means, as would have enabled the deceased to have avoided the collision; and, by the exercise of reasonable care, they might have stopped the train, or so reduced its speed, after the presence of the deceased and of his manifest intent to pass over the tracks was known, as to have avoided the accident; and the case was thereafter submitted to the jury upon the last clear chance theory.

Appellant assigns error upon the denial of its motion for nonsuit, interposed at the close of respondent's case in chief, the denial of its motions for an instructed verdict and for judgment *non obstante veredicto;* and, also, upon the giving of instructions relating to the doctrine of last clear chance.

As we read the record, the south-bound freight train, which was just leaving Sumner when the accident occurred, is hardly a factor in the case. There is no evidence that the deceased saw it, and being practically half a mile away when the duty devolved upon the deceased to look and listen for approaching trains, neither the noise occasioned by its operation at that

distance nor the imminence of its approach were such (if heard and seen) as to in anywise obscure the sight and sound of the much nearer and rapidly approaching passenger train or lead to the belief that both trains would be on the crossing at the same time. Reasonable minds can hardly differ under the facts as shown in drawing the conclusion that a reasonable and prudent man, in the position occupied by the deceased, must have known that he could have stopped his truck upon the westerly track, and have remained there in perfect safety until after the passing of the passenger train, with ample time to put his truck in motion and proceed on his course thereafter, some time before the danger from the approaching freight train could be in anywise imminent. The accident occurred in daylight, in a place where all of the conditions were well known to the deceased. The train which struck him was a regular one running on time. He had a clear, unobstructed view of the track. He traveled, after he turned to go up the incline to the crossing, a distance of some seventy feet nearly at right angles with the approaching train, and had only to lift his eyes to see it. He could have stopped his truck almost instantly, but did not at any time stop, look, or listen. The train was traveling rapidly, was heard by Mrs. Hoyle from her position at the house at about the time it entered upon the straight track, was emitting considerable quantities of black smoke occasioned by the fresh fire just put in by the fireman; and we see no escape from the conclusion that the deceased was guilty of contributory negligence. *Woolf v. Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997; *Bowden v. Walla Walla Valley R. Co.*, 79 Wash. 184, 140 Pac. 549; *McKinney v. Port Townsend & Puget Sound R. Co.*, 91 Wash. 387, 158 Pac. 107; *Beeman v.*

*Puget Sound Traction, L. & P. Co.,* 79 Wash. 137, 139
Pac. 1087; *Helliesen v. Seattle Elec. Co.,* 56 Wash.
278, 105 Pac. 458; *Herrett v. Puget Sound Traction,
L. & P. Co.,* 103 Wash. 101, 173 Pac. 1024; *Robison v.
Oregon-Washington R. & Nav. Co.,* 176 Pac. (Ore.) 594.

To avoid the force of this contributory negligence,
respondent by her trial amendment, sought to take the
case to the jury on the last clear chance theory, and
it was so submitted. It is argued that, if negligent
in driving the truck upon the westerly track in the
path of the approaching freight train, deceased was
in a position of peril from which he could not extri-
cate himself except by proceeding on across the
easterly track, that the engineer and fireman should
have appreciated this situation, and it was for the
jury to say, under the circumstances, whether or not
they could have stopped the train, or so reduced its
speed as to permit safe passage to the deceased.

Adhering to the rule, are there any facts here shown
which make it applicable? we have already seen that
the approaching freight train was so distant as to
make it not a factor; and it need not be further con-
sidered in this connection. If it should be admitted
that it was the duty of the engine-men to keep a look-
out at all times, notwithstanding their other duties,
and that they saw or should have seen the approaching
truck as it turned to climb the incline to the cross-
ing (which is far more than can be claimed), or that
they saw the truck when it was still eight feet west
of the westerly track, even so, as the truck was travel-
ing at a speed of only two or three miles an hour, and
as a matter of common knowledge could have been
brought to an almost instantaneous stop, there was
nothing to indicate to the engine-men that the de-
ceased would act other than in the usual manner and

as a prudent man should, by bringing his machine to a stop before entering the danger zone, or at a safe distance from the track occupied by the approaching passenger train.  It requires no argument to demonstrate that the engine-men had a right to rely upon this supposition until its fallacy became reasonably apparent, and that, when it could or should have become apparent to them that the deceased was oblivious of the approach of the train or intended in any event to proceed, it was too late to enable them to stop the train or so reduce its speed as to avoid the accident. Having in mind that it was as much the duty of the deceased as it was the duty of the engine-men to avoid the accident, and that the train had the right of way and was traveling at perhaps twenty times the rate of speed of the auto truck, we can see no facts here, nor reasonable inference to be drawn from any of the facts, which justify the submission of the case to the jury.

The judgment appealed from is reversed, with instructions to dismiss the action.

CHADWICK, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.