# HORNSCHUCH *v.* SOUTHERN PACIFIC CO. ET AL.

(203 Pac. 886.)

**Evidence—Spontaneous Exclamation of Bystander Admissible.**

1. A spontaneous exclamation of· a bystander, an eye-witness is admissible as part of the *res gestae*.

**Appeal and Error—Instructions—No Error in Directing the Jury to Disregard Charge of Negligence.**

2. Where no case is made by the pleadings or the evidence requiring the maintenance of safety devices, that ground of negligence should be withdrawn from the jury by proper instruction.

**Employers' Liability Act—Designed for Specific Purpose.**

3. The Employers' Liability Act was never intended to apply to a collision between a railroad train and an automobile on a public highway.

From Multnomah: JOHN McCOURT, Judge.

Department 2.

R. M. Hornschuch is the mother and the duly appointed guardian *ad litem* of Vivian Hornschuch, a minor seven years of age. The defendant, the Southern Pacific Company, is a Kentucky corporation and the owner of a line of railway between Witch-Hazel and Reedville in Washington County, which it operates by electrical power. The defendant Sweeney was its motorman. Louise Schneider was the driver of an automobile. Sunday, October 7, 1917, she invited the mother and the minor to take an automobile ride and while driving along a public road between the above-named places, about 4 P. M., the automobile was struck by an electric train while it "was attempt-

---

1. Declaration of bystander at time of accident as part of *res gestae*, see notes in Ann. Cas. 1912C, 319; Ann. Cas. 1917A, 1009; 20 L. R. A. (N. S.) 133; 33 L. R. A. (N. S.) 109; 42 L. R. A. (N. S.) 948.

ing to cross, on a public crossing, the railroad track of the defendant company,'' as the result of which the minor sustained serious personal injuries.  For cause of action plaintiff alleges that upon approaching the crossing, the automobile ''had slowed down to a few miles per hour and was practically creeping along''; that the plaintiff looked in both directions along the track and ''listened attentively to ascertain if any cars or trains were coming on said tracks''; that ''almost simultaneously with said looking and listening and while the mother of the above-named minor was continuing to look and listen, the train of cars above described, propelled by electric power and making very little noise, and without any previous warning to the minor or to the mother of the above-named minor, suddenly appeared from a westerly direction, traveling at a high, reckless and dangerous rate of speed and regardless of this highway crossing and the persons and vehicles who might be using the same and the above-named minor in particular, and without giving said minor or the mother of the above-named minor time to get the said minor out of said automobile to some place of safety, and without giving the driver of said automobile time to reach a place of safety, violently, carelessly and negligently ran into and against said automobile,'' causing the injuries to the minor.  It is then alleged that the plaintiff did everything possible in the exercise of care and prudence in approaching and crossing the track and in trying to warn the driver of the automobile upon the discovery by the mother of the impending danger, ''but owing to the carelessness and negligence of the defendant company herein described, the time between the discovery of the impending danger and the

collision was so sudden and so short as not to permit the above-named minor to act for her own safety''; that the company was negligent in not posting a ''Railroad Crossing'' sign, at or near the point mentioned; ''that by reason of this failure, the mother of the above-named minor and the driver herein mentioned, failed to notice that the road was approaching this railroad crossing until the turn directly on to the said track was reached''; that at the time of the accident the atmosphere was hazy and dusty and obstructed the view of the railroad; ''that said dust and haziness were caused by the passage of the great number of automobiles and other traffic along the highway at, over and near the crossing described, and that the passage of said automobile and other vehicles along this highway, causing said dust and haziness was well known to the defendant company''; that it knew that a great many automobiles daily passed this crossing, especially on Sunday, thereby causing such haze and dust in the vicinity; that the company carelessly and negligently failed to take notice of such facts; that it failed to run its train at a reasonable rate of speed across the crossing and that such failure was a disregard of the rights of the minor; that if such precaution had been taken, it would have avoided the accident; that the defendants were careless and negligent in not keeping a proper lookout on the train for the approach of vehicles and automobiles; that they wrongfully and negligently failed to warn the mother or the minor by the ringing of any bell or whistle upon the approach of such crossing; that they were ''further careless and negligent in operating and running said train at a reckless, dangerous and exceedingly high rate of speed over

said described crossing''; that the crossing was one of the main highways of the state between Portland, Hillsboro, Forest Grove, McMinnville and other places; that the defendant corporation was negligent in failing to provide at such crossing ''suitable electric signal devices, bells, semaphores, or other suitable and efficient warning methods or devices'' to warn the minor of the approach of the train to and over such crossing; that the defendant knew this was a dangerous crossing ''because of the fact that the railroad track for some miles on either side of said crossing is straight and level and that the orders and time schedule of the defendant company at the time of the collision herein described required its passenger trains to maintain a high and dangerous rate of speed over and across this particular crossing''; that to make such crossing safe, the defendant knew it was necessary to install electric devices and bells and that such installation would not have interfered with the operation of the train; that if such devices had been installed, the minor would have been warned and the accident would have been avoided; that the driver of the automobile was a reasonably prudent and careful driver and free from any neglect; that the injuries to the minor were caused by the neglect and carelessness of the defendant which were the sole and proximate cause; by reason of which, plaintiff asks for damages in the sum of $10,000.

For answer the defendants made a general denial of all of the material allegations of the complaint and as a further and separate defense allege that the crossing is about 4,200 feet west of the town of Reedville; that while the train was approaching this station and was operated in a careful manner, it collided with a Chandler seven-passenger automobile, owned

by Adolph Schneider and operated by Louise Schneider, and that upon approaching the crossing, the occupants of the car failed to look or listen for the approaching train and negligently and carelessly allowed the driver to drive upon the track without looking for the approach of the train and to go upon the railroad directly in front of the train; that defendant's train for some time prior and at the time of the accident was in plain view of the driver and the other occupants of the car; that the automobile, at a high rate of speed was carelessly and negligently driven upon the crossing without stopping or looking or listening for the approaching train; that without any regard for their safety, they attempted to cross the railroad track; that the accident was caused "by the sole and gross negligence and carelessness of the parties in control of said automobile." The reply is a general denial of the new matter. As a result of the trial, the jury found for the defendant upon which judgment was rendered and the plaintiff appeals, claiming that the court erred in admitting the evidence of M. Tihl, a passenger on the train, as to what he saw and heard and in particular that he heard a lady standing in a Ford machine, say, "Stop," also that the court erred in the giving of certain instructions and in refusing to give plaintiff's requested instructions.    Affirmed.

For appellant there was a brief over the names of *Mr. C. T. Haas* and *Mr. Joseph Woerndle,* with an oral argument by *Mr. Haas.*

For respondents there was a brief over the name of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. Alfred A. Hampson.*

JOHNS, J.—The witness Tihl, testified:

"Well, the whistle was blowing right along. We were coming in, and I was sitting up by the window, with the window open, and just as I felt the brakes go on I turned and looked out, and there was a Ford machine standing by the curve, with a lady standing in the back end of the machine, and I heard her say, 'Stop.' "

The witness further testified that he spoke to the woman and saw the machine after the accident, that "the window was open, and just then I looked out and saw this Ford machine on the curve and standing still. The Ford had made the turn already. They were right on the curve" and the lady was standing in the back part of it. He also testified:

"Q. Did you see the Schneider automobile?

"A. I seen them—the first I seen of that machine was when it went on the outside of the Ford machine, and was just a little bit past.

"Q. You saw that Schneider automobile, then, in which these people were riding, just the other side of the Ford?

"A. It was past the Ford.

"Q. After it had passed the Ford?

"A. The Ford was right on the curve—just made the turn of the curve.

"Q. And before the smash-up, of course?

"A. Yes; before the smash-up."

The evidence of the witness that he heard the lady in the Ford machine say "Stop" was admitted by the trial court as a part of the *res gestae*. The plaintiff claims that this was error. The brakeman, W. H. Gould, testified that "there was a machine at the crossing where we struck the car." As we read the

record, both the train and the automobile were going toward Portland and the county road ran parallel with the railroad track to the crossing where a turn was made in the county road to make the crossing, and the Ford machine referred to by witness Tihl was standing in the county road at some point in the turn at the time of the collision, and apparently the Schneider car passed the Ford car as it stood there in the county road. Although there is no evidence as to the exact point where the Ford car did stand or as to how far it was from the crossing, yet from the photographs in evidence, it is very apparent that it could not have been more than 150 feet from the crossing and that the Ford car had a plain and unobstructed view of the crossing and of the Schneider car as it went to, up and on the railroad track. The surrounding country was open, and outside of the cattleguards, telephone and telegraph poles and trolley wires, there was nothing to obstruct the view in any direction. That is to say, it appears from the physical facts and surrounding circumstances that a person standing in the Ford car on the curve could at all times see the Schneider car as it passed and drove to and upon the railroad crossing. Charles S. Sweeney, who was the train's motorman, testified:

"There was automobiles out in the road, and I noticed an automobile running along close to where the train was to be met, and the crossing. There was another automobile standing at the turn of the crossing, apparently waiting for the train to go by, and this automobile when it got behind that one—lined up between me—we were, of course, approaching this crossing rapidly—why I presumed that it stopped there."

E. W. Stephens, a life insurance agent, testified:

"Now, I don't remember in particular that car stopping, or how it got there, but there was a small car there, and this Schneider car had to go around that, and we were quite aware then that these people hadn't seen the train, because they paid no attention to it, especially when they went around this other car that apparently had stopped to let the train go by."

Mrs. Stephens testified that:

"When they came to the turn they made the turn, and there was a Ford standing in the road there, and they went around that Ford and went right up to the track.

"Q. Did you see anyone in the Ford?

"A. Oh, yes; I talked to the lady in the Ford. * *

"Q. Did you hear her do anything?

"A. I heard some calling and screaming. I heard them holler—I presume it was her.

"Q. That was before the collision?

"A. Oh, yes; that was all before the collision."

A. A. Nielsen, in speaking about the Schneider car testified:

"A. Why, it just passed around the Ford that was standing at the curve.

"Q. Had it passed the Ford?

"A. It had passed the Ford; yes.

"Q. And then the emergency brake went on?

"A. Well, I say yes. I looked out through the window, and at the same time I felt the emergency brake on.

"Q. The automobile then had made that turn?

"A. Around the Ford; yes, sir. * *

"Q. And it had passed the Ford—the Schneider car had passed the Ford, or the car that you say was standing there in the road?

"A. Yes, sir.

"Q. How far was the train at that time from the crossing, if you know?

"A. Well, anywheres from 75 to 100 feet from the crossing, I would judge."

The evidence is conclusive that with the Ford car in the lead, it and the Schneider car were running in the county road parallel with the railroad track and in the same direction with the train; that the Ford car stopped when it reached the curve and that after it had stopped on the curve, the Schneider car came from behind, passed it, and drove to and upon the crossing. In this situation the witness Tihl who was a passenger on the train, testified that he heard the woman in the Ford car who was standing up say, "Stop," and the collision instantaneously followed.

1. None of the parties in the Ford automobile were called as witnesses. This statement of the lady in the automobile was a spontaneous exclamation of a bystander. Wigmore on Evidence, Volume 3, page 1755, says:

"In a few courts, the declarations of a mere bystander have been excluded. But, in the greater number, no such discrimination is made,—assuming, of course * * that the bystander's declarations relate only to that which has come under his observation."

On principle, the case of *Britton* v. *Washington Water Power Co.*, 59 Wash. 440 (110 Pac. 20, 140 Am. St. Rep. 858, 33 L. R. A. (N. S.) 109), is square in point and it is there held:

"In an action for injuries to a boy alleged to have been kicked off the steps of a street-car by the conductor after opening the door, the exclamation of a bystander 'The boy is off!' made as the conductor started to open the door, is admissible as part of the *res gestae.* * *

"If the declaration of the boy is admissible as forming a part of the occurrence, as we have held, it would

seem to follow that the exclamation of a bystander, contemporaneous with the occurrence, is also admissible. The exclamations of third parties present are as much a part of the *res gestae* as those of the parties themselves. * *

"The exclamation, 'The boy is off!' shows that it was made under the pressure of excitement, and that it was the spontaneous, impulsive statement of one who believed that it expressed the truth."

In the case of *Atlanta Consolidated Street Ry. Co.* v. *Bagwell,* 107 Ga. 157, the trial court had permitted the person injured "to testify that, just prior to the collision, 'People on the street were screaming for the motorman to stop.' " This was assigned as error. The opinion says:

"We think these sayings or statements of the bystanders made immediately before the accident were part of the *res gestae* and were admissible. * * "

Thomas, in his work on Negligence, Rules, Decisions and Opinions (2 ed.), Volume 2, page 1148, says:

"As applied to cases based on negligence the doctrine of *res gestae* usually arises respecting evidence of statements, declarations and expressions made by the injured person, or by a servant of one of the parties, or by third persons standing by.

"The rule broadly stated is, that the character, quality or cause of a tortious act may be explained by exclamations, declarations or statements coincident with the injury, provided they be calculated to unfold the nature and quality of the acts which they are intended to explain. They must be concomitant with the principal action and so connected with it as to be regarded as the result and consequence of coexisting motives, and must not have been made as merely narrative of a past occurrence."

101 Or.—19

*Emens* v. *Lehigh Valley R. Co.,* 223 Fed. 810, is in point, where the testimony of a bystander was admitted. On page 825 of its opinion, the court says:

"It is true that Mr. and Mrs. Granger were onlookers and not actual participants in the running of either the train or the automobile, but in a sense they were actors by reason of their immediate proximity to the collision, only eight hundred feet away, and which must have occurred from within six to twelve seconds after the train was passing them. * *

"The exclamation of Mrs. Granger was entirely disinterested, and it was spontaneous (drawn out by the conditions existing), and there was no premeditation, and it was relevant, "citing Chamberlayne, the Modern Law of Evidence, Volume 4, Section 3015, page 4186, where the author says, " 'Naturally the influence of a particular occurrence said to have created an automatic utterance is far more powerfully exerted upon the person immediately affected than upon those who have merely seen it.' "

Applying the law to the facts, the use of the word "stop" by the lady in the Ford car was the natural and spontaneous outcry for anyone in her position, and she was within at least 150 feet of the crossing and it was immediately followed by the collision. Under the facts shown, this testimony of Tihl, that he heard the lady in the Ford car say "Stop" was competent and admissible as a part of the *res gestae,* the value and effect of which was for the jury.

2. The court instructed the jury that the defendant corporation was not required to maintain at the crossing "electric signal devices, bells or other automatic devices, for the protection of the public and plaintiff, and the charge of negligence in that particular made by plaintiff is withdrawn from your consideration." This is assigned as error. As stated, it was an un-

obstructed crossing where a person who looked could see a train either going or coming for some distance. For such reason the case of *Russell* v. *Oregon R. & N. Co.*, 54 Or. 128 (102 Pac. 619), cited and relied upon by appellant, is not in point. It is apparent that the court's instruction followed *Robinson* v. *Oregon-Wash. R. & N. Co.*, 90 Or. 490 (176 Pac. 594), where it is said:

"Neither the pleading nor the evidence makes a case requiring an automatic bell at the crossing in question and that ground of negligence involved in the want of such a signal should have been withdrawn from the jury by appropriate directions."

The court instructed the jury:

"Plaintiff must recover, if at all, upon her charge of negligence; First, that the train was operated at a high, reckless, unreasonable and dangerous rate of speed, or, second, that defendants carelessly and negligently failed to ring any bell or whistle whatever or to sound any proper warnings or signals in approaching the crossings."

Plaintiff assigned the giving of this instruction as error because it did not take into consideration the allegations of negligence in failing to provide for electric bells or semaphore devices, but that question was properly withdrawn. The plaintiff requested the following instruction:

"The court instructs you that the negligence of any third person in this case would not be imputed to the minor plaintiff herein."

This instruction was refused but the court gave the following instruction:

"Defendants by their answer seek to impute to plaintiff the alleged negligence of others. You are instructed that the negligence, if any, of the driver of

said automobile, or of other persons in control thereof, if you find there was any such negligence as alleged in defendant's answer, cannot be imputed to this plaintiff.''

Plaintiff's requested instruction was fully covered by this instruction.

The court refused plaintiff's following instruction:

''The court instructs you that there is only one question of negligence for you to determine; that is, whether or not the defendants, or either of them, were in any respect negligent as alleged in plaintiff's complaint, and if you find that there was such negligence in any of the particulars alleged in the complaint and that this negligence was the approximate cause of plaintiff's injury, then your verdict should be for the plaintiff.''

This is assigned as error but the court gave this instruction:

''Plaintiff is not required to prove negligence in all the particulars alleged in her complaint, but it will be sufficient if she establishes to your satisfaction by a preponderance of the evidence that the defendant was guilty of negligence in any of the particulars alleged in her complaint, and which the court has not excluded from your consideration; neither is she required to prove injury in all the particulars alleged in the complaint, but she is entitled to a verdict at your hands if she proves any of the injuries alleged to your satisfaction by a preponderance of the evidence, and that the same was the proximate result of the negligence of the defendant or defendants.''

3. This also fully covers the requested instruction. Plaintiff claims that her cause of action is founded upon the Employers' Liability Act, Chapter 3, Laws of 1911, and cites and relies upon the decisions of this court in *Clayton* v. *Enterprise Electric Co., Peterson* v. *Standard Oil Co., Mallory* v. *Marshall-Wells Co.,*

and *Camenzind* v. *Freeland Furniture Co.* Those were decisions under the Employers' Liability Act and neither of them is in point. Here the defendant company was operating an electric train on its own line of railroad over which was a public crossing and the plaintiff sustained her injury through the driving of the automobile to and on that crossing. The machine was owned by Adolph Schneider and was driven by Louise Schneider, his daughter. The defendant corporation had no control over and did not sustain any contractual relation to the owner of the automobile or its occupants. Neither did they have any control over or sustain any relation to the train. The Employers' Liability Act was designed for a specific purpose. Under the facts shown here it was never intended that any of its provisions should apply to a collision between a railroad train and an automobile on a public crossing. After a careful consideration of the whole record, and the questions presented on the appeal, we hold that the plaintiff had a fair trial and that no prejudicial error was committed. Judgment is affirmed.  AFFIRMED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.