## EUGENIA NAHORSKI, Appellant, v. ST. LOUIS ELECTRIC TERMINAL RAILWAY COMPANY.

### Division One, July 30, 1925.

1. **LEGAL AGE: Female: Statute of 1921: Next Friend.** The Act of 1921, Laws 1921, p. 399, declaring that "all persons of the age of twenty-one years shall be considered of full age for all purposes, . . . and until that age is attained they shall be considered minors," has no retrospective operation, and did not make a minor of a woman who had attained to the age of eighteen years before its enactment. Although she was not twenty-one years of age at the time it became effective and at the time her cause of action accrued, she was not a minor and was not entitled to have a next friend to represent her in the suit, if she was eighteen years of age before her cause of action accrued and before the act became effective, because under the then existing law she was of legal age when she attained to eighteen years.

2. **NEGLIGENCE: Evidence: Weight: Contrary to Physical Facts.** Where the testimony for plaintiff and that for defendant in a law case cannot be reconciled, but either might be believed, the appellate court cannot hold that the verdict was against the evidence, even on the theory that the court is not bound to believe testimony contrary to the physical facts or inherently impossible; but the weight of the testimony was for the jury.

3. ———: **Instruction: Failure to Look for Street Car.** In an action for personal injuries caused by a collision between a motor truck attempting to cross a street-car track and a street car approaching

the crossing, it is not error to instruct the jury that, "if the plaintiff negligently failed to look for the approaching car and that whatever injuries she suffered were caused or directly contributed to thereby, your verdict will be for the defendant," where there is substantial evidence that she did not look, though conscious of the approaching danger, and that such negligence directly contributed to her injury.

4. ———: ———: Driver of Motor Truck: Injury to Invitee. The negligence of the driver of a motor truck, in not looking for an approaching street car before or while attempting to cross the track, will not be imputed to a guest or invitee riding on the truck, but this rule does not absolve the guest or invitee from exercising ordinary care for her own safety. And if there is substantial evidence that when the truck was six feet from the track rail she looked and was conscious of the approaching street car and its attendant danger, but made no objection or warning to the driver, or if she told him to hurry up or stop and his apparent inattention or failure to heed her warning caused her no concern and she did not look again until too late for effective warning or action, an instruction telling the jury that if she negligently failed to look for the approaching car and if whatever injuries she suffered were caused thereby, their verdict must be for defendant, is not error.

5. ———: ———: Failure to Look: Precluding Last-Chance Doctrine: Abandoned. Although plaintiff pleaded and proved facts which entitled her to go to the jury on the last-chance doctrine, she cannot be heard to complain that the court gave to the jury an instruction for defendant which in effect precluded them from considering the doctrine, if she asked no instruction on the last-chance doctrine, and by her other instructions asked and given abandoned that theory of recovery. Under such circumstances the defendant had a right to ignore such abandoned theory in its instructions.

6. ———: From Collision Alone. It is not erroneous to instruct the jury that the fact that there was a collision between the street car and motor truck is not alone evidence of negligence on the part of either.

7. ———: Evidence: Involuntary Exclamation: Res Gestae. It is not error to permit a witness for defendant to testify that immediately before the truck hit the street car she said: "Look girls, it looks like he is trying to commit suicide," where the words appear to have been an involuntary exclamation made practically at the moment of the collision and therefore a part of the *res gestae*.

Corpus Juris-Cyc. References: Appeal and Error, 3 C. J., Section 756, p. 850, n. 24; 4 C. J., Section 2836, p. 858, n. 3. Constitutional Law, 12 C. J., Section 699, p. 1056, n. 88; Section 781, p. 1086, n. 57. Evidence, 22 C. J., Sections 540, p. 450, n. 49; Section 544, p. 453, n. 68. Infants.

31 C. J., Section 3, p. 986, n. 26.  Motor Vehicles, 28 Cyc. p. 38, n. 24;
25.  Negligence, 29 Cyc., p. 549, n. 50; p. 551, n. 64, 68, 69.  Street Rail-
roads, 36 Cyc., p. 1560, n. 74; p. 1561, n. 78, 79; p. 1582, n. 11; p. 1608, n.
48; p. 1613, n. 80; p. 1626, n. 44; p. 1635, n. 92; p. 1643, n. 27.  Trial,
38 Cyc., p. 1636, n. 23; p. 1693, n. 55; p. 1778, n. 73; p. 1779, n. 75, 76.

Appeal from St. Louis City Circuit Court.—*Hon. Charles
B. Davis*, Judge.

AFFIRMED.

*Earl M. Pirkey* for appellant.

(1)   All persons shall be considered minors until
they attain the age of twenty-one years.   Laws 1921, p.
399.  As plaintiff, a minor, prosecuted this suit without a
guardian or next friend and a judgment was rendered
against her, it is the duty of the court to set aside the
judgment and appoint a next friend at whatever stage of
the proceedings it appears that plaintiff is a minor. Han-
lin v. Meat Co., 174 Mo. App. 466; Randalls v. Wilson, 24
Mo. 76.  (2)  The verdict is against the evidence.  Under
the evidence the verdict should as a matter of law have
been for the plaintiff.  Plaintiff's evidence shows that the
street car ran into the truck in which plaintiff was seated
after the truck had crossed one track and had nearly
crossed the other track of defendant's street railway,
and where the truck had been in full view of the motor-
man for a long distance and for a sufficient length of
time to enable him to stop the street car in time to avoid
striking the truck.   That makes out the strongest kind
of a case of negligence against defendant, and there could
be no possible doubt about the motorman being guilty of
the grossest negligence and carelessness in striking the
truck—and this, whether the street car was going fast
or slow; for, if it was going fast, it was violating the
speed ordinance, and, if it was going slow, it could have
easily stopped in a short distance.   Defendant's version
of the accident, based upon its evidence, is so discredited
by the contradictions between its witnesses and their
evident falsifications, and is so irreconcilable with and

repugnant to the physical facts in the case, that it should be rejected as a matter of law. Roseman v. United Rys. Co., 251 S. W. (Mo. App.) 104; Sexton v. Street Ry. Co., 245 Mo. 254, 272; Nugent v. Milling Co., 131 Mo. 241, 252; Hook v. Mo. Pac. Ry. Co., 162 Mo. 569, 580; Dunphy v. Stock Yards Co., 118 Mo. App. 506, 522; Spiro v. Transit Co., 102 Mo. App. 250, 262; Schaub v. Ry. Co., 133 Mo. App. 448. The only defense raised by the answer is the charge of contributory negligence. But as there is absolutely no evidence in the record on which can be based a finding of contributory negligence, that defense must be disregarded. Consequently, as a matter of law, plaintiff is entitled to a verdict in this case. At least, the verdict and judgment should be set aside, and the plaintiff granted a new trial. (3) Instruction numbered 7 was erroneous. (a) Because there is no evidence tending to show that plaintiff was guilty of negligence. The giving of an instruction authorizing the jury to find contributory negligence on a state of facts for which there is no evidence constitutes reversible error. (b) Said instruction is erroneous for the further reason that it excludes from the consideration of the jury the last-chance theory of the case. The last-chance doctrine having been pleaded and proven, plaintiff did not by failing to instruct on it waive the right to a recovery on that theory, but is entitled to a recovery. Petersen v. Transit Co., 199 Mo. 331, 340; Rush v. Railway Co., 157 Mo. App. 504. Contributory negligence is no defense under the humanitarian or last-chance doctrine. Ehman v. Himeles, 243 S. W. (Mo. App.), 244. (4) The trial court erred in permitting, over plaintiff's objection, the defendant's witness, the show woman, Ethel Meyers, to testify to an alleged statement made by her in conversation with others in the street car just before the occurrence of the accident, the alleged statement being, "Look girls, it looks like he is trying to commit suicide," it being evidence of an unsworn and hearsay statement viciously harmful to plaintiff's case.

*Burton & Hamilton* and *Anderson, Gilbert & Wolfort* for respondent.

(1)   Appellant was not a minor.  The age of majority for females was not raised until 1921, when an act of the Legislature went into effect as of June 20, 1921. Once having reached her majority, that status continued irrespective of the Act of 1921.  That act was not retrospective.   Hope Mutual Insurance Co. v. Flynn, 39 Mo. 483; Barton County v. Walser, 47 Mo. 189; Leete v. Bank, 115 Mo. 184; Jamison v. Zausch, 227 Mo. 417; State ex rel. v. Lyons, 104 Kan. 702; Smith v. Smith, 104 Kan. 629. (2)   The verdict in this case is not against the evidence, but is for the right party.   (3)   The court did not err in giving Instruction 7 at the request of the defendant: (a)   There was abundant evidence in the record to support this instruction.   Gubernick v. United Railways Co., 217 S. W. 35; Leapard v. Railways Co., 214 S. W. 268. (b)   Appellant raised the issue of contributory negligence in two instructions offered and given by the court. (c)   Even if appellant is correct, that by failing to instruct on the humanitarian doctrine she did not waive her right to recover on that theory, by having raised the issue of contributory negligence she is in no position to complain of the giving of Instruction 7.   White v. Railroad, 250 Mo. 476; Aronovitz v. Arky, 210 S. W. 620. (4)   The trial court did not err in permitting respondent's witness Ethel Meyers to testify as to the exclamation made by her at the instant before the collision took place.   This exclamation was part of the *res gestae.* State v. Walker, 78 Mo. 386; May v. Railroad Co., 284 N. W. 529; Rocker v. Ry. Co., 247 S. W. 1016.

ATWOOD, J.—Appellant and respondent will be referred to herein as plaintiff and defendant, respectively, they having so appeared in the prosecution of this case in the Circuit Court of the City of St. Louis.   An automobile truck in which plaintiff was riding as an invitee and one of defendant's street cars collided at the intersection of Twelfth and North Market streets in the city of St. Louis, and plaintiff was thrown out and injured. Damages asked in the sum of $15,000.

Plaintiff pleaded the Vigilant Watch and Speed ordinances of the city of St. Louis, and further alleged that plaintiff's injuries "were directly caused by the said negligence of defendant's motorman in as aforesaid negligently failing to sound the gong of said street car or to give warning of its approach before it as aforesaid struck said automobile, and in as aforesaid negligently failing at the time said automobile was struck as aforesaid and for some time next prior thereto to keep a vigilant watch ahead for vehicles on or moving towards said track on which said street car was running, and in as aforesaid negligently failing to stop said street car before it struck said automobile or check the speed of said street car sufficiently to prevent it from striking said automobile when he knew or by the exercise of ordinary care would have known that said automobile was in imminent danger of being struck by said street car and said Eugenia Nahorski injured thereby and that neither said Eugenia Nahorski nor the driver of said automobile could extricate said Eugenia Nahorski from said situation without said automobile being struck by said car, and said Eugenia Nahorski injured thereby in time by the exercise of ordinary care to have with the means at his command and consistent with the safety of the persons on said street car stopped said street car before it struck said automobile as aforesaid or checked the speed of said street car sufficiently to have prevented it from striking said automobile, and in as aforesaid negligently running said car on said track on said Twelfth Street at and for some time next prior to the time it as aforesaid struck said automobile at a negligent and high rate of speed and in excess of ten miles per hour and in as aforesaid negligently causing and permitting said street car to as aforesaid strike said automobile."

Defendant's answer consisted of a general denial and a special plea of contributory negligence. Jury returned verdict for defendant, and plaintiff appeals. The facts will be referred to as they appear pertinent to the contentions here made.

I. Plaintiff's first assignment of error is that the court erred in refusing to set aside the verdict and appoint a next friend to represent her in a re-trial of the case, because it was developed after the verdict was in that plaintiff was born September 15, 1901. The accident

Legal
Age.

occurred November 24, 1921, the verdict was rendered June 14, 1922, and hence plaintiff was more than eighteen years of age and under twenty-one years of age both at the time the injury occurred and at the time the verdict was rendered. By law approved March 25, 1921, effective June 20, 1921, the General Assembly of Missouri fixed the age of twenty-one years as "full age" for all persons. For some years previous and on September 15, 1919, when plaintiff arrived at the age of eighteen years, the Missouri statute fixed the "full age" of females at eighteen years. [Sec. 370, R. S. 1919.] Plaintiff contends that the Act of 1921 changed her status as an adult to that of a minor and from June 20, 1921, until September 15, 1922, when plaintiff reached the age of twenty-one years, she was a minor. The act is found on page 399, Laws 1921, and is as follows:

"Sec. 370, *Minors, who considered.*—All persons of the age of twenty-one years shall be considered of full age for all purposes, except as otherwise provided by law, and until that age is attained they shall be considered minors.

"Approved March 25, 1921."

Statutes fixing "full age" or legal majority affect the personal status of persons coming within it and the validity of their contracts. They are not merely procedural or remedial laws. To hold that this statute is retrospective in its operation would be to hold it unconstitutional. [Sec. 15, Art. 2, Mo. Constitution.] If its intent is, as plaintiff contends, to extend the minority of all persons who were over eighteen and under twenty-one years of age at the time of its passage, it impairs the obligation of contracts entered into by such persons while they were of legal age under the prior statute, and the statute would have to be declared unconstitutional.

No such intent appears in the language of the statute, and we hold that it is not retrospective in its operation.

Plaintiff further contends that although she became of age on September 15, 1919, yet by the new law which became effective June 20, 1921, she was thereby reduced to her former condition of minority. It cannot be said that the new statute extended her privileges as a minor, because these were terminated on her eighteenth birthday, when she attained her legal majority under the statute then in effect. It is not likely that the General Assembly intended to disturb this status, nor do the terms of the statute indicate such intention. The law is not retrospective and the phrase "all persons" here evidently means all persons who up to the time the law went into effect had not reached their legal majority. A similar statute has recently been twice so construed in Kansas. [Smith v. Smith, 104 Kan. 629; State ex rel. v. Lyons, 104 Kan. 702.] The Kansas statute is found in the Kansas Session Acts of 1917, at page 234, and is as follows: "The period of minority extends in males and females to the age of twenty-one years."

Prior to this enactment the Kansas statute read, (Sec. 6357, C. S. 1916): "The period of minority extends in males to the age of twenty-one years, and in females to that of eighteen years."

The language "males and females" in the Kansas statute of 1917 is as general and all inclusive as "all persons" in the Missouri statute. This assignment is ruled against plaintiff.

II. Plaintiff next contends that the verdict is against the evidence, and seeks to bring this case within the rule that courts are not bound to believe testimony contrary to the physical facts or inherently impossible. The testimony offered by plaintiff and that offered by defendant cannot be reconciled. No good purpose would be served by a restatement of the evidence here. A careful examination of the whole record discloses that both versions cannot be believed, but either version might be believed. It was a proper case for the jury. The point

Weight of Evidence.

here raised is without merit and is ruled against appellant.

III.   Plaintiff says the court erred in giving instruction numbered 7, (a) because there is no evidence tending to show that plaintiff was guilty of the negligence there specified, and (b) because said instruction excludes from the consideration of the jury the last-chance theory of the case.   Instruction Number 7 is as follows:

*Looking.*

"The court instructs the jury that if the plaintiff negligently failed to look for the approaching car and that whatever injuries, if any, plaintiff suffered were caused or directly contributed to thereby, your verdict will be for the defendant."

Is there any evidence that the plaintiff negligently failed to look for the approaching car?   Testifying in her own behalf at pages 13 and 14 of the abstract, plaintiff said:

"I saw that street car before it hit the truck.   The street car was between Warren and Benton Streets when I first saw it.   Benton Street is north of North Market Street.   At that time the truck was between the first rail of the north-bound track and the curbing, about six feet from the east rail of the north-bound track.   I could not tell how fast the street car was going. I told the driver that he should either hurry up or stop, and he said there was plenty of time, the car was far away.   I did not say anything after that, I trusted in the driver—I thought it was perfectly safe.   .   .   .   I saw the street car again as we got to the south-bound street-car rails, and at that time the front wheels of the truck had crossed the west rail of the south-bound track, and at that time the street car was amount fifty feet away and about a second after that it hit the truck."

Also, at pages 16 and 17, plaintiff says:

"On this morning when I got about six feet from the east rail of the north-bound track I saw this McKinley car, and it was then between Benton and Warren

Streets about a block and a half away. I had not seen it before that and don't know whether Stankiewicz saw it. Yes, he looked when we passed the curb line. I don't know whether he saw the car then or not. I don't know whether he looked first or me, but I know I looked when we passed the curb line. At the time we were six feet from the rail we were running between three and four miles an hour. I told him to hurry up or stop. . . . I didn't know whether he could make it or not. He had not driven faster than three or four miles an hour at any time after we left Ninth and Tyler and up to the time I got hurt. We had crossed United Railways street-car tracks before that on the way, and saw street-cars coming before we crossed. I had no conversation with Stankiewicz as to whether or not he had time to get across these other tracks. The United Railways cars were about two blocks away when we started to cross their tracks. I said nothing to him then. When he said we had plenty of time, the car was far away, we were between the east rail of the north-bound track and the curb line, about six feet from the east rail. When we finished the conversation we had gotten to the east rail of the north-bound track. I didn't look to see where the car was then. I looked again when the front wheels of the truck had crossed the west rail of the south-bound track, and the car was then about fifty feet away and we were still going about three or four miles an hour."

Testimony of William Stankiewicz who drove the truck, John Nohorski, plaintiff's husband, and Joseph Katofski, the latter two also riding on the truck, is of the same general import, except it does not corroborate plaintiff in her statement that after she saw the street car approaching on the south-bound track and while the truck was moving only three or four miles an hour in a place of safety between the east curb and the east rail of the north-bound track she "told the driver that he should either hurry up or stop, and he said there was plenty of time, the car was far away." The driver said that he did not hear Mrs. Nahorski say anything and

that he had no conversation whatever with her. If under the circumstances indicated plaintiff did not make any objection or warn the driver, as was said in Township v. Anderson, 114 Pa. St. 643, she "willingly joined . . . in testing the danger, and she is responsible for the consequences of her own act." Even if she told the driver to hurry up or stop (and he says she did not), his apparent inattention and failure to heed her attempted warning caused her no concern and she did not even look at the street car again until too late for effective warning or action. It thus appears that there was substantial evidence tending to prove that plaintiff, though conscious of the approaching street car and its attendant danger, negligently failed to keep a lookout and seriously strive to stay within the safety zone, and that such negligence directly contributed to her injury. True, the negligence, if any, of the driver will not be imputed to the guest or invitee, but this rule does not absolve plaintiff from exercising ordinary care for her own safety. [Friedman v. United Rys. Co., 293 Mo. 235; Burton v. Pryor, 198 S. W. (Mo. App.) 1117; Fechley v. Traction Co., 119 Mo. App. 358.] It was for the jury to determine what plaintiff actually said and did and whether or not she was guilty of contributory negligence. The pleadings and proof warranted this instruction.

But, plaintiff says she pleaded and proved facts which entitled her to go to the jury on the last-chance doctrine, and she contends that the court committed error in giving instruction numbered 7 because it precluded the jury from a consideration of this theory. Plaintiff asked and received instructions on every other theory presented in the case. On the last-chance doctrine her counsel stood mute and asked no instruction. Instructions should be confined to issues insisted on at the trial. [38 Cyc. 1636.] The practice of a party standing by and asking instructions on one or more theories on which he relies and seemingly abandoning another which he has also pleaded

*Last Chance.*

and sought to prove is to be condemned. [Leabo v. Goode, 67 Mo. 126.] This defendant had a right to ignore such abandoned theory in his instructions asked. If they precluded the consideration of any theory relied on by plaintiff she should then have spoken or now hold her peace. By her silence the last-chance doctrine fell out of the case (Keele v. Railroad, 258 Mo. 1. c. 75) and she is now estopped to complain of this instruction. Such is the reasoning even in Sweet v. Bunn, 195 Mo. App. 1. c. 502, cited by appellant.

IV. Plaintiff alleges error in the giving of instruction numbered 8, which is as follows:

"The court instructs the jury that the fact that the truck and street car came together is no evidence of negligence on the part of either the plaintiff, the driver or the defendant, but that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that the defendant was negligent as set out in the other instructions, and unless you so find your verdict must be for the defendant."

*Collision.*

When read in connection with other instructions given this is tantamount to a charge that the fact alone that the truck and street car collided is no evidence of negligence on the part of either party, and is not erroneous.

V. Error is assigned because defendant's witness Ethel Meyers was permitted to testify that immediately before the truck hit the street car she said: "Look girls, it looks like he is trying to commit suicide." This appears to have been an involuntary exclamation made practically at the moment of the collision and was properly admitted as a part of the res gestae. [May v. C. B. & Q. Railroad Co., 284 Mo. 1. c. 529.]

*Res Gestae.*

The case is affirmed. All concur.