(No. 6270. February 21, 1936.)

E. A. McINTIRE, Respondent, v. OREGON SHORT LINE
RAILROAD COMPANY, a Corporation, Appellant.

[55 Pac. (2d) 148.]

H. B. Thompson and Geo. H. Smith, for Appellant.

394

S. T. Lowe, for Respondent.

GIVENS, C. J.—Respondent's automobile, in which he was driving across appellant's main line tracks at Heyburn, was struck by the engine of a freight train, practically demolishing the car, throwing respondent out of it, and severely injuring him, for which he recovered damages in this action.

For the purposes of this discussion we may consider that appellant's tracks run east and west at the place of the accident. The road upon which respondent approached the track led from the north and west, and approximately 40 feet north of the track after dipping down through a slight depression turned to the south and crossed the track at right angles. Five hundred and seventy-six feet west of the crossing is appellant's Heyburn depot. Between the crossing and the depot and on the north side of the track parallel thereto there is an embankment of dirt somewhat overgrown with weeds, with its highest elevation about four and one-half feet, 300 feet east of the depot, which would be 276 feet west of the crossing.

Respondent testified he stopped his car north of the track at about where the crossing warning sign is located, which he estimated to be about six paces or 18 feet from the track, that he looked to the left and right and saw no train, that his vision was obscured to the right by the dirt embankment referred to above and the depot, and that he heard no whistle or bell (parenthetically one of the grounds of alleged negligence was that no whistle was blown or bell rung; evidence was given both ways, but by the jury's verdict we must approach the problem with the premise that no whistle was blown or bell rung). Respondent then put his automobile in low gear and after his automobile had rolled back about six feet started across the tracks at about one mile per hour, at which speed he would progress about one and a half feet per second. While respondent's testimony is slightly contradictory and conflicting, a fair inference is that he meant to state that he continued to look both ways and saw nothing until he was on the track, when he saw the engine approaching rapidly on his right, and so close that he could not back

up and avoid it, and therefore gave his car "the gas" and attempted to rush across out of the way, that the right rear portion of his automobile was struck by the engine, and that he knew no more for some time thereafter.

Appellant takes the position that if respondent's vision was obscured by the embankment and the depot or either the embankment or depot at the point he stopped, he should have looked when in a place of safety and when his vision was not obscured, and that either he did not look from such vantage point, because if he did he would have seen the oncoming train, or that if he did so look he did not see it, but is charged with knowledge of what he could and should have seen.

Lundy, the front brakeman on the train, testified he was riding in the cab of the engine on the left-hand side and that when the engine was 300 or 350 feet west of the crossing he saw respondent about 200 feet north of the crossing approaching at a speed of 15 miles per hour, and that respondent did not stop, that when he saw respondent was apparently going to attempt to cross in front of the train the brakeman called to the engineer to stop the train, the engine then being 50 or 60 feet west of the crossing.

Instruction number 10, the giving of which is assigned as error, was as follows:

"You are instructed, gentlemen of the jury, that one who has the last clear chance or opportunity of avoiding an accident, notwithstanding the negligence of the other party, is considered in law to have been solely responsible for the accident, altho the actions of the person injured may have been the primary cause of the injury, yet an action for such injury may be maintained when it appears that by the exercise of reasonable care and diligence, the defendant might have avoided the consequences of the injured party's negligence. In this case, if you were to find that the agents and employees of the defendant had a last clear chance to and could have stopped the train and avoided the accident, then you are instructed as a matter of law, that the plaintiff could recover such sums as would compensate him for the damage he has sustained by reason of the accident, not, however, exceeding the amount as prayed for in his complaint."

This court has thus stated the doctrine of last clear chance:

" . . . . If the one party (here appellant) knows of the peril of the other, (respondent) although brought about by that other's (respondent) negligence, in time to avoid injuring him, he is at once put to a degree of care commensurate with the present situation of the parties." (*Short v. Boise Valley Traction Co.*, 38 Ida. 593, at 599, 225 Pac. 398, citing cases.)

Analyzing the statement gives this initial requirement for application of the doctrine: that appellant must have perceived respondent's peril at a time when respondent could not have saved himself and in time for appellant to have avoided the accident. Here appellant did not perceive respondent's peril and respondent was in no peril until respondent was upon or so close to the track that he could not stop, which, beyond any dispute, was at a time when the train could not have been stopped before passing the crossing.

Trains are under no legal obligation to stop or slow up for a crossing when the operators thereof merely see an automobile approaching and there is still time and opportunity for the automobile to stop before being in a position of peril, and there is nothing to indicate that the driver of the automobile is not going to do so. (*Burrow v. Idaho & Wash. Northern R. R.*, 24 Ida. 652, 135 Pac. 838; *Green v. Los Angeles Terminal Ry. Co.*, 143 Cal. 31, 76 Pac. 719, 101 Am. St. 68; *Lambert v. Southern Pac. R. Co.*, 146 Cal. 231, 79 Pac. 873; *McCarthy v. Pacific Electric Ry. Co.*, 82 Cal. App. 503, 255 Pac. 868; *St. Louis I. M. & S. R. Co. v. Gibson*, 48 Okl. 553, 150 Pac. 465; *Sadler v. Northern Pac. Ry. Co.*, 118 Wash. 121, 203 Pac. 10; *Woolf v. Washington Ry. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997; *Miller v. Northern Pac. Ry. Co.*, 105 Wash. 645, 178 Pac. 808; *Mouso v. Bellingham & N. Ry. Co.*, 106 Wash. 299, 179 Pac. 848; *Choquette v. Key System Transit Co.*, 118 Cal. App. 643, 5 Pac. (2d) 921; *Pippy v. Oregon Short Line R. Co.*, 79 Utah, 439, 11 Pac. (2d) 305; *Rasmussen v. Fresno Traction Co.*, 138 Cal. App. 540, 32 Pac. (2d) 1091.) Respondent testified his brakes were in good order and at a mile an hour he could stop in a foot. The vice of the instruction is that it said "stopped" when the train could not then be stopped, but

must have indicated to the jury that the court, however, considered there was such a possible situation. This was reversible error because as stated in *Nordquist v. W. A. Simons Co.*, 54 Ida. 21, at 27, 28 Pac. (2d) 207, at 209:

"The fact that an instruction may be correct as a general principle of law is not material, because it was the duty of the trial court to confine itself to a statement of such principles of law as were applicable to the evidence admitted in support of the contentions of the parties, and thus to aid the jury in arriving at a correct determination of the issues involved, for, if an instruction is not thus based on the evidence, it is erroneous, in that it introduces before the jury issues not presented thereby, and is well calculated to mislead and induce *them to suppose that a state of facts constituting such issues existed, in the opinion of the court, under the evidence and might be considered by them.* 14 R. C. L., sec. 51." (Italics herein ours.)

"And in determining the scope of its instructions the court must keep in mind the issues made by the pleadings in the case, and the evidence adduced in support thereof, and no instruction should be given which tenders an issue that is not supported by the pleadings and such evidence, or which deviates therefrom in any material respect. The theory upon which the rule is founded is that the giving of an instruction outside the issues made by the pleadings tends to mislead the jury into the belief that such an issue is before them and bring them to an improper verdict. (14 R. C. L., sec. 50.)"

*Holt v. Spokane & Palouse Ry. Co.*, 3 Ida. 703, 35 Pac. 39; *Brown v. Hardin*, 31 Ida. 112, 169 Pac. 293; *Jakeman v. Oregon Short Line R. R. Co.*, 43 Ida. 505, 516, 256 Pac. 88; *Crystal Ice & Ice Cream Co. v. Wood*, 53 Okl. 592, 157 Pac. 904. The correct expression would have been not to have said "stopped" but in substance "that the appellant could have, by the exercise of reasonable diligence, avoided the accident." (*Branson v. Northern Pac. Ry. Co.*, 55 Ida. 220, 41 Pac. (2d) 629.)

It was shown without dispute that the front of the locomotive was 16 feet high. Respondent testified the floor of his automobile was 15 inches above the ground; there is no evidence as to how high above the floor of the car his

eyes were when seated in the car. Assuming that it was anywhere between 2½ to 4 feet above the bottom of the car, his eyes, when he stopped 18 or 24 feet north of the track, would have been in the neighborhood of 5 feet from the ground or 4 feet above the level of the rail at the crossing, and there was testimony that the track was substantially level between the crossing and the depot. The highest point of the embankment between him and the depot above the level of the rail would have been 4.3 feet. If the engine had been at the depot at that time and not west of the depot, there would have been approximately one-half of the engine in the range of his vision. As stated, however, in *Pokora v. Wabash Ry. Co.*, 292 U. S. 98, 54 Sup. Ct. 580, 78 L. ed. 1149, 90 A. L. R. 1049, such computation is not of conclusive significance unless we know where the engine was at that time. From the pictures (Defendant's Exhibits 8 and 9) taken from the roadway looking west toward the depot coupled with the oral testimony and the above comparative elevations, it is apparent that if the engine and train were west of the depot, sight of them would be entirely cut off from one in the roadway or at least greatly obscured, from a point 75 feet 10 inches north of the crossing to some point near 35 feet 10 inches north of the crossing or south of said last point at which respective locations the pictures were taken. Just where on the roadway one's line of vision towards the west to or beyond the depot would be entirely clear is not definitely shown because while the elevations in the exhibits above referred to show the highest point, there is no evidence as to the relative southern projection of this bank of dirt north of and parallel to the railroad track from the crossing west to the depot. If we take respondent's testimony as to where he stopped, his rate of speed, and where he was hit, and figure back and compare that with the relative speed of the train estimated to be between 30 and 35 miles per hour, we have the following: at 30 miles per hour, the train would go 44 feet per second, and to travel the 576 feet from the depot to the crossing, 13 and 1/11 seconds, figuring that the rear right wheel of respondent's automobile was on or just off the south rail of the tracks, and that he had been traveling up to that time at only 1 mile per hour, al-

though he said that while on the track and when he saw the train he accelerated or tried to accelerate his speed, but to what extent it is not stated, so figuring at 1 mile per hour, he would travel approximately 1½ feet per second, which would put him approximately 18 feet and 3 inches north of where he was struck. The track is 4 feet 8 inches wide; the car was estimated to be 8 feet 9 inches long, which would put the front of his automobile 4 feet 10 inches north of the north rail when the train was at the depot. If the train was going 35 miles per hour, it would of course decrease the time in which it went from the depot to the crossing, and correspondingly decrease the distance between the point of impact and where the car was when the train was at the depot. If Lundy's testimony is correct, then of course respondent's testimony is incorrect, and *vice versa.* There was likewise testimony by witnesses that when the train was west of the depot it could not be seen from north of the crossing, but that the upper half of the train could be seen from points north, after passing to the west of the depot, over the embankment, all the way from the depot to the crossing. An analysis of the application of the principle announced in *Pokora v. Wabash Ry. Co., supra,* is contained in *Hartl v. Chicago, M., St. P. & P. R. Co.,* 73 Fed. (2d) 875, as favorable to appellant as any we have seen, but the difficulty is the uncertainty as to where the train was in relation to the depot, either when respondent stopped, if he did stop at the point he said he did, or at the point he would have had clear vision to the depot, which point is not clearly determinable from the evidence. Conceding that if he did not look after he passed the crossing warning sign, still we would have to determine that the train would have then been within his vision, that is, east of the depot, before we can so charge him as a matter of law with the duty of having seen it even though he did not see it, and say that there was not a question for the jury. Of course, if the brakeman's testimony is correct, the engine was in as relatively plain sight of respondent as his automobile was of the brakeman, but the reconcilement of this conflict was for the jury and does not afford the basis of an undisputed premise for the declaration as a matter of law of contributory negligence. This case is

distinguishable from *Polly v. Oregon Short Line R. R. Co.,* 51 Ida. 453, 6 Pac. (2d) 478, and other similar cases, *Keith v. Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718, *Koster v. Southern Pac. Co.,* 207 Cal. 685, 279 Pac. 788, and *Rogers v. C., R. I. & P. Ry. Co.,* 39 Fed. (2d) 601, in this: that therein there was no question as to relative positions of the automobile and train when Polly said he looked, and that there was at that time clear vision to him when he was in an unequivocal position of safety. Here we have two disputed variables; the position of the engine, and the point of unobstructed vision. If there was no uncertainty as to the relative positions of the respondent and the train and that respondent when in a place of safety could and therefore should have seen the train, and either did not look or did not see it, appellant's position would be tenable, but it is only when not disputed or when only one inference can be drawn therefrom that the question of contributory negligence becomes one of law for the court to determine, and the nonsuit was properly refused. (*Testo v. Oregon-Washington R. R. & Nav. Co.,* 34 Ida. 765, 203 Pac. 1065; *Smith v. Oregon Short Line R. R. Co.,* 32 Ida. 695, 187 Pac. 539.)

██ ██ Appellant assigns as error the interrogation of appellant's engineer on cross-examination concerning an asserted statement made by him to the effect that when the brakeman called him to stop the train that in reaching from the whistle cord to the brake lever he caught his glove and if he had not done so he could have stopped the train, denied by the engineer. This statement was not, as to the instruction given and the evidence as to stopping the train, pertinent because whether he caught his glove or not, the evidence shows without dispute or any conflict that the train could not then have been stopped in time to have prevented or avoided the accident. On the issue as to whether anything else might have been done, short of stopping, to avoid the accident, it was admissible as part of the *res gestae.* (*Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, at 531, 99 Pac. 91; *Judd v. Oregon Short Line R. Co.,* 55 Ida. 461, 44 Pac. (2d) 291, 293.) Likewise appellant should have been allowed to show the substance of what the brakeman said to the engineer immediately prior to the accident. (*Shawnee-*

*Tecumseh Traction Co. v. Henry,* 110 Okl. 160, 236 Pac. 894; *Mathewson v. Olmstead,* 126 Wash. 269, 218 Pac. 226; *Hornschuch v. Southern Pac. Co.,* 101 Or. 280, 203 Pac. 886; *Heg v. Mullen,* 115 Wash. 252, 197 Pac. 51; *Prickett v. Sulzberger & Sons Co.,* 57 Okl. 567, 157 Pac. 356; *Lang v. Camden Iron Works,* 77 Or. 137, 146 Pac. 964 (3d case); *Henderson v. Coleman,* 19 Wyo. 183, 115 Pac. 439; rehearing denied, 19 Wyo. 236, 115 Pac. 1136; *Bugge v. Seattle Electric Co.,* 54 Wash. 483, 103 Pac. 824 (2d case); *Elliff v. Oregon R. & Nav. Co.,* 53 Or. 66, 69, 99 Pac. 76; *Cecil Paper Co. v. Nesbitt,* 117 Md. 59, 83 Atl. 254; *Baldwin v. People's Ry. Co.,* 7 Pennew. (Del.) 383, 72 Atl. 979, 7 Pennew. (Del.) 81, 76 Atl. 1088; *Nahorski v. St. Louis Electric Terminal Ry. Co.,* 310 Mo. 227, 274 S. W. 1025; *Kansas City Southern Ry. Co. v. Wade,* 132 Ark. 551, 201 S. W. 787; *Northern Texas Traction Co. v. Caldwell,* 44 Tex. Civ. 374, 99 S. W. 869; *Correira v. Boston Motor Tours,* 270 Mass. 88, 169 N. E. 775; *Gerbing v. McDonald,* 201 Wis. 214, 222, 229 N. W. 860, 864; *Asch v. Washburn Lignite Coal Co.,* 48 N. D. 734, 186 N. W. 757.)

 During the examination of George Warner, a witness for appellant, with regard to whether he heard the train whistle immediately prior to the accident, appellant sought to have the witness refresh his recollection and memory from a typewritten statement made shortly after the accident, signed but not written by the witness, which offer the court upon objection rejected, because a sufficient foundation had not been made, which ruling was correct because it had not been shown the witness needed to refresh his memory. (70 C. J. 582, sec. 748.)

Reversed and remanded for a new trial. Costs to appellant.

Budge, Morgan, Holden and Ailshie, JJ., concur.